Kenneth **FOLEY**, Pond View Excavation Corporation, and Kenlin Properties, LLC, Appellants,

v.

**TRINITY INDUSTRIES LEASING COMPANY, Appellee.**

No. 05–09–01184–CV.

Court of Appeals of Texas, Dallas.

June 2, 2010.

Leane C. Medford, Elrod, PLLC, Dallas, TX, for Appellants.

Dorothea L. Vidal, Vidal & Mack, P.C., Dallas, TX, for Appellee.

Before Justices BRIDGES, FITZGERALD, and FILLMORE.

## OPINION

Opinion By Justice FILLMORE.

In this interlocutory appeal from the trial court's denial of their special appearances, appellants Kenneth Foley, Pond View Excavation Corporation (PVE), and

Kenlin Properties, LLC (Kenlin) assert their contacts with the State of Texas are insufficient to support personal jurisdiction and the exercise of jurisdiction over them does not comport with traditional notions of fair play and substantial justice. We conclude appellants are not subject to personal jurisdiction in Texas, reverse the trial court's order, and render judgment dismissing the claims against appellants.

## Background

Appellee Trinity Industries Leasing Company (Trinity) sued M–R Logistics, LLC and PVR Windup, Inc. f/k/a Pond View Recycling, Inc. (PVR) claiming M–R Logistics failed to make the required payments under an agreement to lease rail cars from Trinity and PVR failed to perform as the guarantor on the lease. Neither M–R Logistics nor PVR contested jurisdiction in Texas.

On May 28, 2009, Trinity deposed Foley as PVR's corporate representative. Foley and the videographer were in Rhode Island while Trinity's counsel and the court reporter were in Texas. Pursuant to rule of civil procedure 11, Trinity and PVR agreed "any disputes that arise related to the deposition will be submitted to the Court in Texas under Texas procedure" and "jurisdiction over the witness and the discovery procedure shall be in Dallas Texas."

On June 1, 2009, Trinity filed a third amended petition adding Clyde Ames, Foley, PVE, and Kenlin as defendants. Trinity alleged Foley and Ames own M–R Logistics and that Foley executed the guaranty agreement for PVR, but did not intend to actually guarantee the obligation. Trinity also alleged that the "defendants" prepared a credit application, made numerous fraudulent representations of fact to Trinity during the negotiations of the lease agreement, and failed to disclose material information to Trinity. Although Trinity alleged in the third amended petition that the new defendants could be served at addresses in Massachusetts, it did not allege any facts in the service section of the petition that would bring any of the defendants under the Texas long-arm statute.

Foley, PVE, and Kenlin filed special appearances contesting they were subject to jurisdiction in Texas and supported the special appearances with affidavits from Foley. Foley stated he was a resident of Massachusetts and had lived in Massachusetts continuously since 1967. He also attested he was the manager of M–R Logistics, a Massachusetts limited liability company; the president of PVR, a Rhode Island corporation; the managing member of Kenlin, a Rhode Island limited liability company; and the president of PVE, a Massachusetts corporation.

To his knowledge, Foley has not engaged in any personal business in Texas in the last forty years. Other than traveling to Texas to attend a mediation in this case on behalf of PVR, the only time Foley was physically present in Texas in the last forty years was when he was serving in the United States Army and was stationed at Fort Hood for approximately sixteen months in 1966 and 1967. Foley further stated that, other than during the mediation, he did not believe that he had "ever spoken with any agent or representative of [Trinity] in Texas" or had "telephoned anyone in Texas in connection with the claims or facts alleged in this case—other than the attorneys engaged for the purpose of this lawsuit."

Foley stated he had not committed a tort in Texas and had never maintained a place of business in Texas. Foley denied he approached Trinity about leasing any rail cars, either individually or on behalf of M–R Logistics. He also denied preparing

a credit application to submit to Trinity and stated he understood that Ames, as president of M–R Logistics, signed the credit application. Foley also understood the credit application was submitted to a company located in Montana. Foley signed the guaranty agreement on behalf of PVR in his capacity as its president and denied having any dealings with Trinity in his individual capacity. Foley denied that he (1) represented to anyone associated with Trinity that he was personally guaranteeing M–R Logistics' obligations; (2) conducted or participated in fraud on behalf of M–R Logistics, PVR, Kenlin, or PVE; (3) personally paid any corporate debts of any of these entities; or (4) commingled his personal funds with the funds of any of these entities. Although Foley entered into personal guaranties on behalf of PVR, Kenlin, and PVE, he did so through contractual agreements that "kept [him] separate from the corporate entities." Foley attested that other than the mediation in this case and his "deposition that took place telephonically on May 28, [sic] 2009 (in this lawsuit), I have never spoken with anyone that I knew to be an employee or representative of [Trinity]."

Although Foley received distributions from PVR, Kenlin, and PVE, he denied diverting any company profits from M–R Logistics, PVR, Kenlin, or PVE for his personal use. Each entity kept separate books, records, and financial records and filed a separate tax return.

According to Foley, other than entering into the lease agreement with Trinity, M–R Logistics has never done business in Texas, maintained a place of business in Texas, or had any officers, agents, or employees in Texas. Foley never traveled to Texas on business for M–R Logistics and, as a representative of M–R Logistics, had "never spoken with anyone in Texas other than to talk to counsel representing M–R Logistics in this lawsuit."

Foley stated PVR collects debris and operates a facility to process construction and demolition debris. PVR is "completely separate" from M–R Logistics, Foley, Kenlin, and PVE. PVR is not registered to do business in Texas. Other than entering into the guaranty agreement that is the subject of this suit, PVR has never done business in Texas, maintained a place of business in Texas, or had any officers, agents, or employees in Texas. On behalf of PVR, Foley has "never spoken with anyone in Texas other than to talk to counsel representing Pond View Recycling in this lawsuit, and during the mediation I attended."

According to Foley, Kenlin owns and leases real property in Rhode Island. Kenlin is "completely separate" from Foley, PVR, and PVE and has never engaged in recycling or excavation operations. Kenlin's principal office was in Rhode Island until 2008, when it moved to Massachusetts. Kenlin does not own any property located in Texas and does not advertise in Texas or market its products or services in Texas. Kenlin has never done business in Texas, never maintained a place of business in Texas, and never had any officers, agents, or employees in Texas. Foley has never traveled to Texas on business for Kenlin and, as a representative of Kenlin has "never spoken with anyone in Texas other than to talk to counsel representing Kenlin Properties in this lawsuit."

Foley stated PVE provides excavation, landscaping, "sewer laying," and septic services. It is not registered to do business in Texas and is "completely separate" from Foley, PVR, and Kenlin. PVE has never done business in Texas, maintained a place of business in Texas, or had any officers, agents, or employees in Texas.

PVE maintains its principal office in Massachusetts and does not own any property located in Texas. PVE does not advertise in Texas or market its products or services in Texas.

Trinity filed a fourth amended petition alleging as to Foley that "Clyde Ames [sic] has engaged in business in the State of Texas and has committed torts in the state of Texas." Trinity alleged Kenlin and PVE were "the alter ego[s] of Kenneth Foley." Trinity also alleged the rail cars were delivered in Texas at the direction of Foley, that each of the "Defendants committed torts damaging [Trinity], in whole or in part in Texas," and that "Defendants conspired to interfere with the Lease Agreement, to defraud creditors, including [Trinity], to interfere with [Trinity's] contract, and other actionable wrongs against [Trinity.]" Trinity alleged that, because PVE and Kenlin were alter egos of Foley, the acts of each constitutes the acts of the other.

Trinity responded to the special appearances arguing appellants failed to negate all bases for jurisdiction. Trinity also asserted Foley had already made an appearance and agreed to submit to the court's jurisdiction based on the letter agreement relating to his deposition. Trinity attached to its response excerpts from Foley's deposition establishing Foley founded PVR and PVE. Foley also testified PVR ceased operations in March 2008 and sold its "permit" to TransLoad America (TLA) for four million dollars. When Trinity's counsel asked about the dumpsters PVR would take to customers, Foley responded, "Those were owned by Pond View Excavation. I don't know. The trucks—I think the containers were owned—I'm not sure exactly who owned what." The trucks and dumpsters were also purchased by TLA.

Foley testified the four million dollars received from the sale were used to pay PVR's debts including debts related to M–R Logistics. Although a portion of the deposition was not put into evidence, Trinity's counsel's next question in the record was, "Why would Pond View Excavation's—why would you be paying Pond View Excavation's debts from the $4 million?" Foley responded, "I don't—I have—you know, it's a small company, overlapping of things. Just—I don't know. I don't have that answer." Foley clarified there were "two companies working out of the same building and, you know, a lot of—it just—was it Pond View's debt or was it the recycling's debt?" They "did [their] best to try to distinguish one; but it paid for, you know, like I say parts and different things, you know, that we used."

The trial court denied the special appearances and this appeal ensued.

## Personal Jurisdiction

▇▇▇ Because the question of whether a trial court has personal jurisdiction over a nonresident defendant is one of law, we review de novo the trial court's decision to deny a special appearance. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex.2007); *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex.2002). When, as here, the trial court does not file findings of fact and conclusions of law in support of its special appearance ruling, we infer all facts necessary to support the judgment and supported by the evidence. *Moki Mac*, 221 S.W.3d at 574 (citing *BMC Software*, 83 S.W.3d at 795). However, when the appellate record includes the reporter's and clerk's records, the trial court's implied findings are not conclusive and may be challenged for legal and factual sufficiency on appeal. *BMC Software*, 83 S.W.3d at 795.

In a challenge to personal jurisdiction, a plaintiff and defendant bear shifting burdens of proof. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex.2010). The plaintiff bears the initial burden to plead sufficient allegations to bring a nonresident defendant within the reach of the Texas long-arm statute. *Id.; BMC Software,* 83 S.W.3d at 793. Once the plaintiff has pleaded sufficient jurisdictional allegations, the defendant bears the burden of negating all bases of jurisdiction alleged by the plaintiff. *BMC Software,* 83 S.W.3d at 793; *Capital Tech. Info. Servs., Inc. v. Arias & Arias Consultores,* 270 S.W.3d 741, 748 (Tex.App.-Dallas 2008, pet. denied) (en banc). "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Kelly,* 301 S.W.3d at 658. The defendant can discharge its burden to negate those allegations on either a factual or legal basis:

> Factually, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations. The plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction. Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction.

*Id.* at 659; *see 2007 East Meadows, L.P. v. RCM Phoenix Partners, L.L.C.,* 310 S.W.3d 199, 204 (Tex.App.-Dallas 2010, no pet. h.). However, when the plaintiff asserts personal jurisdiction exists under a corporate veil-piercing theory, the plaintiff bears the burden to prove the contacts of another person or entity should be imputed to the defendant if the plaintiff relies on those contacts to assert personal jurisdiction over the defendant. *BMC Software,* 83 S.W.3d at 798; *Capital Tech. Info. Servs.,* 270 S.W.3d at 749.

Texas courts may assert personal jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction comports with federal and state constitutional due process guarantees. *Retamco Operating, Inc. v. Republic Drilling Co.,* 278 S.W.3d 333, 337 (Tex.2009). The long-arm statute's broad language allows Texas courts to "reach as far as the federal constitutional requirements of due process will allow." *Moki Mac,* 221 S.W.3d at 575 (quoting *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex.1991)). Under constitutional due process analysis, personal jurisdiction is achieved "when the nonresident defendant has established minimum contacts with the forum state, and the exercise of jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Id.* at 575 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The purpose of the minimum contacts analysis is to protect a nonresident defendant from being haled into court when its relationship with the forum state is too attenuated to support jurisdiction. *Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 806 (Tex.2002). "Significant contacts suggest that the defendant has taken advantage of forum-related benefits, while minor ones imply that the forum itself was beside the point." *Spir Star AG v. Kimich,* 310 S.W.3d 868, 872

(Tex.2010). Only if minimum contacts are established does the court consider the second prong of the constitutional due process analysis—whether maintenance of the action offends traditional notions of fair play and substantial justice. *See Clark v. Noyes,* 871 S.W.2d 508, 520 (Tex.App.-Dallas 1994, no writ).

A defendant's contacts with a forum can give rise to either specific or general jurisdiction. *BMC Software,* 83 S.W.3d at 795–96. General jurisdiction will attach if the defendant's contacts with the forum are continuous and systematic, regardless of whether the alleged liability arises from those contacts. *Id.* at 796. General jurisdiction is "dispute-blind," as it permits the court to "exercise jurisdiction over the nonresident defendant based on any claim, including claims unrelated to the defendant's contacts with the state." *PHC–Minden, L.P. v. Kimberly–Clark Corp.,* 235 S.W.3d 163, 168 (Tex.2007). Thus, general jurisdiction involves a more demanding minimum-contacts analysis than is involved in specific jurisdiction. *Id.* at 168. Usually, the defendant must be "engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there; activities that are less extensive than that will not qualify for general in personam jurisdiction." *Id.* (citing 4 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1067.5).

Specific jurisdiction is dispute-specific and attaches when the plaintiff's cause of action arises out of or relates to the nonresident defendant's contacts with the forum state. *Retamco,* 278 S.W.3d at 338. The analysis focuses on the relation-ship among the defendant, the forum, and the litigation. *Id.* For specific jurisdiction to attach, there must be a substantial connection between the nonresident defendant's contacts with the forum and the operative facts of the litigation. *Moki Mac,* 221 S.W.3d at 585.

Under either a specific or general jurisdiction analysis, the relevant contacts are those through which the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Retamco,* 278 S.W.3d at 338. In determining purposeful availment, we consider three issues. *Id.* at 338–39. First, only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or third person. *Id.* at 339. Second, the contacts must be purposeful rather than random, fortuitous, or attenuated. *Id.* Third, the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *Id.* What is important is the quality and nature of the defendant's contacts with the forum state rather than their number. *Id.*

### Analysis

Appellants first assert Trinity failed to make any allegations in the third amended petition to invoke jurisdiction under the Texas long-arm statute and failed to timely file the fourth amended petition.[1] However, the plaintiff may amend its pleading to include necessary factual allegations to support jurisdiction. *See Kelly,* 301 S.W.3d at 659. Here, Trinity filed the fourth amended petition seven days before

---

1. At oral argument, appellants' counsel argued the petition was not timely filed pursuant to the trial court's scheduling order. This scheduling order does not appear in the clerk's record. However, in their brief, appellants assert the fourth amended petition was not timely because it was filed without leave of court within seven days of the special appearance hearing.

the hearing on the special appearances. Appellants did not object to the fourth amended petition or claim any surprise or prejudice from the filing. Accordingly, we will consider the jurisdictional allegations made by Trinity in its fourth amended petition.[2]

### A. Jurisdiction over Foley

 In its fourth amended petition, Trinity alleged the trial court has both specific and general jurisdiction over Foley. As noted above, general jurisdiction requires more substantial contacts with Texas than specific jurisdiction. *PHC–Minden*, 235 S.W.3d at 168. Here, Trinity's petition contains no allegations that Foley had any longstanding or substantial business activities in Texas-such as marketing or shipping products or maintaining an office here. *See id.* Accordingly, Foley's affidavit asserting he is not a Texas resident was sufficient to negate general jurisdiction as a basis for the trial court's exercise of personal jurisdiction. *See Kelly*, 301 S.W.3d at 658–59.[3]

Trinity argues Foley is subject to specific jurisdiction because he committed a tort in Texas relating to the lease agreement between Trinity and M–R Logistics.[4] In his affidavit, Foley denied he committed a tort in Texas and supported that denial with statements about his actions pertaining to the lease agreement and the capacity in which he performed any action. Specifically, Foley attested he signed the guaranty agreement on behalf of PVR in his capacity as its president and denied he (1) conducted or participated in fraud on behalf of M–R Logistics or PVR, (2) approached Trinity about leasing the rail cars, (3) spoke to or made any misrepresentations to Trinity about the lease, (4) prepared the credit application, or (5) had any dealings with Trinity in his individual capacity.

Trinity argues Foley failed to negate all jurisdictional bases because he failed to deny or negate the allegations in Trinity's petition that (1) he submitted a false credit application in Texas, (2) he attempted to induce Trinity to enter into the lease agreement with M–R Logistics, (3) the lease is governed by Texas law, (4) he signed the lease in his individual capacity, (5) he directed the rail cars be delivered in Texas, (6) he conspired to interfere with, and did interfere with, the lease, (7) he concealed or failed to disclose material information to Trinity in Dallas, (8) he delivered a guaranty to Trinity in Dallas on behalf of PVR, and (9) at the time he executed the guaranty agreement, he had no intention that PVR would actually guarantee M–R Logistics' obligations.

---

**2.** *See also Pac. Bell Tel. Co. v. Advance Tech. Consultants*, No. 05–99–00364–CV, 1999 WL 1140188, at *3 (Tex.App.-Dallas Dec. 14, 1999, no pet.) (not designated for publication) (amended petition containing new jurisdictional facts filed within seven days of special appearance hearing with no showing of surprise by defendant was properly before trial court).

**3.** Trinity has not argued on appeal that Foley was subject to the trial court's jurisdiction based on general jurisdiction. However, Trinity asserted in its petition that Foley was subject to the trial court's jurisdiction based

on "both general and specific" minimum contacts, and the trial court denied Foley's special appearance without entering findings of fact and conclusions of law. Accordingly, we will consider on appeal whether the trial court could have found Foley was subject to jurisdiction in Texas based on general jurisdiction.

**4.** *See* Tex. Civ. Prac. & Rem.Code Ann. § 17.042(2) (Vernon 2008) (nonresident's commission of a tort, in whole or in part, in Texas constitutes doing business in Texas for purposes of long-arm statute).

 Although Foley was required to negate Trinity's claimed bases for jurisdiction, he was not required to specifically negate each factual allegation in Trinity's petition. *See Botter v. Am. Dental Ass'n,* 124 S.W.3d 856, 860 n. 1 (Tex.App.-Austin 2003, no pet.) ("As to the Botters' first specific issue, the ADA did not have to negate every allegation-it had to negate every basis for jurisdiction.").[5] Further, by denying he spoke to or made any misrepresentations to Trinity or had any dealings with Trinity in his individual capacity, Foley denied a number of the allegations pointed to by Trinity. We conclude Foley's affidavit negated Trinity's claimed bases for subjecting Foley to jurisdiction in Texas.

The burden then shifted to Trinity to present evidence establishing jurisdiction. *See Kelly,* 301 S.W.3d at 658; *2007 East Meadows,* 310 S.W.3d at 203–04. Trinity failed to present any evidence of Foley's alleged wrongful conduct in Texas, including any evidence of the alleged fraudulent credit application, the alleged misrepresentations Foley made to Trinity, or Foley's alleged individual involvement in the lease of the rail cars. Trinity presented no evidence of any contacts by Foley with Texas pertaining to the lease or the guaranty that would establish Foley is subject to jurisdiction in this state. *See IRA Res., Inc. v. Griego,* 221 S.W.3d 592, 596 (Tex. 2007) (per curiam) (plaintiff "faltered" at first step of purposeful availment analysis by offering "no evidence that [the defendant] had any contact with him whatsoever, much less made any misrepresentations").

 Trinity next asserts Foley consented to jurisdiction in Texas through the rule 11 agreement pertaining to Foley's deposition as PVR's corporate representative in which Trinity and PVR agreed that "jurisdiction over the witness and the discovery procedure" would be in Texas. Foley did not sign the rule 11 agreement; rather, it was signed by counsel for Trinity and counsel for PVR.

 When a party seeks to enforce an agreement designating jurisdiction for a lawsuit against a nonsignatory to the agreement, that party has the burden to prove the theory which it claims binds the nonsignatory to the agreement. *See e.g. CNOOC Se. Asia Ltd. v. Paladin Res. (SUNDA) Ltd.,* 222 S.W.3d 889, 895 (Tex. App.-Dallas 2007, pet. denied) (op. on reh'g). Here, there is nothing in the record to indicate Foley agreed to individual jurisdiction over him in Texas or that counsel for PVR was in any way authorized to reach such an agreement for Foley. *See id.* at 899 (nonsignatories not bound by forum selection clause because no evidence nonsignatories authorized anyone to bind them to agreement).

Trinity argues Foley stated in his affidavits that he never spoke to anyone in Texas as a representative of M–R Logistics or PVR and, therefore, his deposition must have been in his individual capacity. However, Foley recognized in one affidavit that he participated in the deposition and nothing in any of his affidavits converts his deposition from one taken as a corporate representative for PVR to one taken in his individual capacity. Further, even if the deposition had been taken in Foley's individual capacity as a witness, there is no evidence Foley agreed to submit to jurisdiction in Texas as a party to this lawsuit. *See id.* at 898–99.

---

5. *See also Anderson v. Bechtle,* No. 01–00–00593–CV, 2001 WL 930205, at *2 (Tex.App.-Houston [1st Dist.] Aug. 16, 2001, no pet.) (not designated for publication) (defendants not required to separately deny each alleged misrepresentation; stating they never had oral or written communications with plaintiffs was sufficient).

We conclude Foley negated all claimed bases for jurisdiction over him in Texas and did not consent to jurisdiction in Texas. Further, Trinity failed to meet its burden to produce evidence establishing jurisdiction over Foley in Texas. Accordingly, the trial court erred by denying Foley's special appearance.

## B. Kenlin

 Trinity alleges Kenlin was subject to jurisdiction in Texas as the alter ego of Foley. Under an alter ego theory, personal jurisdiction may be established by imputing the jurisdictional contacts of one person to its alter ego. *BMC Software*, 83 S.W.3d at 798; *Ramirez v. Hariri*, 165 S.W.3d 912, 916 (Tex.App.-Dallas 2005, no pet.). Because Trinity failed to establish Foley was subject to jurisdiction in Texas, there are no jurisdictional contacts of Foley to impute to Kenlin. Accordingly, the trial court erred by denying Kenlin's special appearance.

## C. Pond View Excavation

 Although Trinity alleged in its petition that PVE is an alter ego of Foley, it asserts on appeal that PVE is subject to jurisdiction as the alter ego of PVR. The only allegation supporting Trinity's argument on appeal is the statement on page five of the fourth amended petition that "Kenlin, [PVE] and [PVR] were operated together as a single economic unit and as Foley's alter ego." PVE was required only to negate the jurisdictional allegations made by Trinity in its petition and we question whether Trinity adequately pleaded PVE was the alter ego of PVR. *See*

*Kelly*, 301 S.W.3d at 658; *Hoffmann v. Dandurand*, 180 S.W.3d 340, 350 (Tex. App.-Dallas 2005, no pet.) (defendant cannot be expected to negate alter ego theory of jurisdiction when it is buried in pleadings). However, we will review whether Trinity met its burden of establishing PVR's and PVE's business activities were so fused that PVR's jurisdictional contacts can be imputed to PVE.[6]

 To "fuse" two corporations for jurisdictional purposes, the plaintiff must prove one company controls the internal business operations and affairs of the other. *BMC Software*, 83 S.W.3d at 799; *All Star Enter., Inc. v. Buchanan*, 298 S.W.3d 404, 421–23 (Tex.App.-Houston [14th Dist.] 2009, no pet.) (applying *BMC Software* to plaintiff's claim one company's jurisdictional contacts should be imputed to an affiliated company). The degree of control exercised "must be greater than that normally associated with common ownership and directorship; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice." *Id.*; *see All Star Enter.*, 298 S.W.3d at 422. All of the relevant facts and circumstances surrounding the operations of the two corporations must be examined to determine whether two separate and distinct corporate entities exist. *PHC–Minden*, 235 S.W.3d at 175–76; *All Star Enter.*, 298 S.W.3d at 422–23. These factors include the amount of the corporation's stock owned by the other entity, the existence of separate headquarters, the observance of corporate formalities, and the degree of

---

6. The Texas Supreme Court has rejected the single business enterprise theory of liability. *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 456 (Tex.2008). However, veil-piercing for purposes of liability is distinct from imputing one entity's contacts with a forum to another entity for jurisdictional purposes. *PHC–Minden*, 235 S.W.3d at 174. When addressing a claim that a corporate entity was subject to jurisdiction in Texas based on a single enterprise theory, the supreme court relied on the jurisdictional veil-piercing factors set out in *BMC Software. Id.* at 175.

one corporation's control over the general policy and administration of the other entity. *PHC–Minden*, 235 S.W.3d at 175; *All Star Enter.*, 298 S.W.3d at 422.

Here, the evidence established PVE is a Massachusetts corporation that does not do business in Texas. Although PVE and PVR had at least one overlapping officer and offices in the same building, Foley stated PVE and PVR were separate corporate entities, kept separate corporate records, and filed separate tax returns. Foley also testified some of the sales proceeds PVR received from TLA were used to pay PVE's debts. Foley was unable to identify during his deposition which debts belonged to which entity, but testified PVE provided equipment to PVR and perhaps owned some of the equipment sold to TLA.

Under these circumstances, we cannot conclude that Trinity met its burden to establish PVE's and PVR's operations were so overlapping that the two entities ceased to be separate and the corporate fiction should be disregarded to prevent fraud or injustice. *See BMC Software*, 83 S.W.3d at 799; *All Star Enter.*, 298 S.W.3d at 422. Further, the evidence provides no basis for imputing PVR's jurisdictional contacts with Texas to PVE. *See PHC–Minden*, 235 S.W.3d at 176; *BMC Software*, 83 S.W.3d at 799; *All Star Enter.*, 298 S.W.3d at 422 ("Stated differently, a 'blurring of the distinction' between entities is insufficient to support jurisdictional veil-piercing, because if affiliated companies maintain separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other."). Therefore, the trial court erred by denying PVE's special appearance.

We sustain appellants' first issue. Having done so, we need not address their second issue. *See* TEX.R.APP. P. 47.1. We reverse the trial court's judgment and ren-

der judgment dismissing the claims against appellants for want of jurisdiction. *See PHC–Minden*, 235 S.W.3d at 176.