**Reverse, Render, and Dismiss; Opinion Filed August 19, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01000-CV

## FAVOUR LEASING, LLC, C.F. ABBOTT FAMILY LLC, C.F. ABBOTT TRUST, AND ORANEE H. ABBOTT TRUST, Appellants

### V.

## PATRICK J. MULLIGAN, AN INDIVIDUAL, AND THE LAW OFFICE OF PATRICK J. MULLIGAN, P.C., A PROFESSIONAL CORPORATION, Appellees

### On Appeal from the 14th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DC-12-14667-A

## MEMORANDUM OPINION ON REHEARING

Before Justices Moseley, Lang, and Brown
Opinion by Justice Lang

We deny appellees' motion for rehearing. On our motion, we withdraw our June 24, 2014 opinion and vacate our judgment of that date. This is now the opinion of the Court.

This is an interlocutory appeal from the trial court's order overruling the special appearance of Favour Leasing, LLC, C.F. Abbott Family LLC, and the LLC's sole members, the C.F. Abbott Trust and the Oranee H. Abbott Trust (collectively, "the Trusts and LLCs"). In three issues, the Trusts and LLCs assert the trial court erred in overruling their special appearance because (1) the appointment of a Texas resident as co-trustee of the Trusts did not establish jurisdiction; (2) their admission of Texas citizenship for diversity jurisdiction purposes did not constitute consent to personal jurisdiction; and (3) their alleged commission of torts did not

establish jurisdiction. We agree. Accordingly, we reverse the trial court's order, render judgment granting the special appearance, and dismiss the claims against the Trusts and LLCs for want of jurisdiction.[1]

## I. FACTUAL AND PROCEDURAL CONTEXT

The facts leading to the present suit date back to 2001 when Texas attorney Patrick J. Mulligan and The Law Office of Patrick J. Mulligan, P.C., a Texas professional corporation (collectively, "Mulligan") entered into an agreement with Utah attorney Charles F. Abbott to jointly represent individuals allegedly injured by the diet drug Fenfluramine/Dexfenfluramine, better known as "Fen-Phen." Under the terms of the agreement, Abbott was to advertise in California and Utah, screen potential clients for compensable injuries, and then refer qualifying claimants to Mulligan. In turn, Mulligan agreed to pay Abbott for the advertising and screening costs and a portion of any recovered attorney's fees.

In July 2006, Abbott sued Mulligan in Utah alleging Mulligan had failed to pay a portion of fees recovered. Mulligan counterclaimed and asserted Abbott had breached the agreement by retaining clients for himself and referring clients to another attorney. The suit was referred to arbitration and resulted in a multi-million dollar award in favor of Mulligan, which award was confirmed by the federal district court in August 2009 and affirmed by the Tenth Circuit in September 2011. *See Abbott v. Mulligan*, 647 F. Supp. 2d 1286 (D. Utah 2009), *aff'd*, 440 Fed. Apx. 612 (10th Cir. 2011).[2]

Mulligan attempted to collect on the judgment, but Abbott claimed he had no assets to satisfy it. Through collection-related discovery, Mulligan learned that Abbott and his wife,

---

[1] Mulligan also named the Charles F. Abbott Trust as a defendant. In the special appearance, the Trusts and LLCs "presume[d]" the naming of that Trust was "an incorrect designation for the C.F. Abbott Trust" and did not otherwise include the Trust in the special appearance. That Trust is not a party to this appeal.

[2] We take judicial notice of these citations. *See* TEX. R. EVID. 201(c), (f).

Oranee, had transferred assets to the Trusts and LLCs beginning in 2001. Mulligan alleged Abbott and his wife retained control and use of the assets after the transfers, and the Trusts and LLCs were created "in a transparent attempt to keep assets protected from collections efforts." Those assets included (1) Abbott's rights to a Maui, Hawaii timeshare, which Abbott transferred in approximately June 2010 to his wife, who then transferred the timeshare to the Oranee H. Abbott Trust; (2) the primary residence of Abbott and his wife, transferred "[i]n or around 2005" to the C.F. Abbott Family LLC; (3) a yacht owned by Abbott and his wife, transferred also "in or around 2005" to Favour Leasing, LLC; (4) Abbott's St. George, Utah condominium, which was transferred in November 2006 to "one of the [Trusts or LLCs];" and, (5) money, which was transferred to the Trusts and LLCs "throughout 2006-2008."

In January 2011, Mulligan sued Abbott, Abbott's wife, and Abbott's law firm, Charles F. Abbott, P.C., a Utah professional corporation. The suit was filed in federal district court in Utah and asserted, based on Abbott, his wife, and the firm's Utah citizenship and Mulligan's Texas citizenship, diversity jurisdiction as the basis for the court's subject matter jurisdiction. Mulligan subsequently joined the Trusts and LLCs as defendants.[3] Upon their joinder, the Trusts and LLCs moved to dismiss the suit asserting diversity jurisdiction had been defeated by their joinder because they were each "considered citizens of the state of Texas by reason of the citizenship of the common trustee, Sandra Kay Harward, and the membership in the limited liability companies in the Trusts." Harward was a relative of the Abbotts and resided in Trinidad, Texas. Mulligan conceded the issue and, on his motion, the claims against the Trusts and LLCs were severed from the claims against Abbott, his wife, and the firm.[4]

---

[3] Mulligan also named the Charles F. Abbott Trust as a defendant in that suit. It is unclear from the record if that Trust was an original defendant or was joined at the same time as the Trusts and LLCs.

[4] The claim against Abbott, his wife, the firm, and the Charles F. Abbott Trust remains pending in the Utah federal district court.

–3–

Mulligan then filed suit in the trial court below, alleging that, upon information and belief, the Trusts had at least one trustee, Harward, residing in Texas; "[t]he citizenship of the trust is determined based on where the trustees reside;" and, the Trusts could be served through Harward at Harward's primary residence. He further alleged that the LLCs had the Trusts as their sole members; "[t]he citizenship of an LLC is based on the citizenship of its members;" and, the Trusts could be served through their registered agent, Abbott's wife. Mulligan claimed the trial court had personal jurisdiction over the Trusts and LLCs because they were "all residents of the state of Texas." As his cause of action, Mulligan asserted as fraudulent transfers, pursuant to the Uniform Fraudulent Transfer Act,[5] the transfers of the Maui timeshare, St. George condominium, residence, yacht, and money were made "with actual intent to hinder, delay, and defraud" him from collecting the $7,000,000 judgment and "without receiving a reasonably equivalent value in exchange."

The Trusts and LLCs responded by denying in their special appearance Mulligan's assertion that Harward's Texas residency and citizenship alone made them Texas residents for purposes of personal jurisdiction and arguing that the concepts of citizenship for diversity jurisdiction purposes and residency for personal jurisdiction differ and involve separate inquiries. They further argued that none of the alleged transfers occurred in Texas or concerned property located in the state of Texas. Additionally, they claimed neither the Trusts nor the LLCs were created, organized, or registered to do business in Texas; ever owned any property in Texas; ever conducted business or had a place of business in Texas; or could have "reasonably anticipate[d] being hauled [sic] into court in Texas over claims [Mulligan] brought in Utah under a contract with a Utah forum selection clause" and "which have been litigated in the courts in Utah for years and which still are being litigated in the courts in Utah." Attached to the special

---

[5] *See* TEX. BUS. & COM. CODE ANN. §§ 24.001-24.013 (West 2009 & Supp. 2013).

appearance were (1) the affidavit of Abbott's wife, who stated she was a trustee of the Trusts and LLCs and verified that the factual statements in the special appearance were true and correct; (2) the civil docket sheet for the Utah suit; and (3) the order dismissing the Trusts and LLCs from the Utah suit.

Mulligan responded by filing an amended petition and a verified response and alternative motion for continuance. In his amended petition, Mulligan identified the Trusts and LLCs in the same manner as he did in his original petition, but as to personal jurisdiction alleged as follows:

> This Court has personal jurisdiction over Defendants, nonresidents, because Defendants consented to Texas jurisdiction and committed torts, which are the subject of this suit, in whole or in part in Texas. This controversy arises out of Defendants' purposeful contacts with Texas. The exercise of personal jurisdiction over Defendants comports with fair play and substantial justice.

Mulligan asserted again his fraudulent transfer claims and added a claim for conspiracy, alleging the Trusts and LLCs "combined with each other and/or the Abbotts to design and implement" the fraudulent transfers. In his verified response and motion for continuance, Mulligan argued that, even if the Trusts and LLCs were not Texas residents by virtue of co-trustee Harward's Texas citizenship, the trial court could nonetheless exercise personal jurisdiction over them because they "had sufficient minimum contacts with Texas." Specifically, Mulligan asserted the Trusts and LLCs consented to jurisdiction and committed the torts of conspiracy and fraudulent transfer in Texas.

With respect to consent, Mulligan argued that by asserting in federal district court in Utah they were each "considered citizens of the state of Texas by reason of the citizenship of the common trustee, Sandra Kay Harward, and the membership in the limited liability companies in the trusts," the Trusts and LLCs "not only judicially admitted in the federal action that they were Texas citizens, but they also sought benefit or advantage from their Texas citizenship in order to defeat the federal court's diversity jurisdiction." As to the alleged commission of torts, Mulligan

–5–

argued that a tort is committed in Texas, "even if the wrongful act is performed by a nonresident outside of Texas––if the plaintiff is injured in Texas and the injury was foreseeable" such that the nonresident "could reasonably anticipate being haled into court to answer for its actions." Mulligan asserted the Trusts and LLCs' "receipt of fraudulently transferred assets and their participation in a tortious and fraudulent scheme to deprive [him] of [his] interest in the Abbotts' assets" resulted in injury in Texas.

As an alternative to ruling on the special appearance, Mulligan requested the trial court grant a continuance of the hearing on the special appearance to conduct jurisdictional discovery, noting the Trusts and LLCs had refused to produce documents in response to the requests for production he served on them.[6]  Attached to Mulligan's response and motion for continuance were (1) Abbott's deposition testimony reflecting, in relevant part, that the Trusts and LLCs were created as part of an estate plan and that some of the alleged transfers had occurred; (2) Harward's declaration with attached documents from (a) the C.F. Abbott Trust reflecting the trust was created in February 2003 and Harward was appointed co-trustee in February 2011; and (b) the Oranee H. Abbott Trust reflecting this trust was created in April 2000 and Harward was appointed co-trustee in March 2011; (3) Abbott's wife's deposition testimony discussing, in relevant part, the Trusts and acknowledging some of the alleged transfers had occurred; (4) the Trusts and LLCs' motion to dismiss the Utah suit for lack of jurisdiction in which they alleged they were "considered citizens of the state of Texas by reason of the citizenship of the common trustee, Sandra Kay Harward, and the membership in the limited liability companies in the trusts;" (5) the Trusts and LLCs' memorandum in support of the motion to dismiss; and (6) Mulligan's counsel's affidavit reflecting (a) service of discovery on the Trusts and LLCs on May 20, 2013 "with the expectation that [the] responses would be used to oppose the special

---

[6] *See* TEX. R. CIV. P. 120a(3).

appearance," and (b) his representation of Mulligan "throughout all of the relevant underlying proceedings," including arbitration.

Following a hearing in which the trial court heard only argument, the trial court overruled the special appearance. Though requested, no findings of fact and conclusions of law were filed. This appeal followed.

## II. SPECIAL APPEARANCE

In three issues, the Trusts and LLCs assert the trial court erred in denying their special appearance because they did not consent to jurisdiction and neither the presence of co-trustee Harward nor the alleged commission of torts is sufficient to establish personal jurisdiction.

### A. Standard of Review

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law which an appellate court reviews de novo. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). When, as here, the trial judge does not issue findings of fact and conclusions of law, we imply all fact findings supported by the evidence that are necessary to support the ruling. *Id.*

### B. Applicable Law

A court must have both subject matter jurisdiction and personal jurisdiction to render a valid and enforceable judgment on a claim. *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996).

#### 1. Subject Matter Jurisdiction

Subject matter jurisdiction refers to the court's power to hear a particular type of suit. *Id.* It is conferred by constitutional or statutory provision and functions as a restriction on federal and state power; neither a party's waiver nor consent can confer subject matter jurisdiction upon a court. *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982); *Carroll v. Carroll*, 304 S.W.3d 366, 367 (Tex. 2010).

–7–

Diversity jurisdiction, one of two basic statutory forms of federal court subject matter jurisdiction,[7] exists where the matter in controversy exceeds $75,000 and is between "citizens of different states." 28 U.SC. § 1332(a); *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006) (citing 28 U.SC. §§ 1331 and 1332); *Lincoln Prop Co. v. Roche*, 546 U.S. 81, 89 (2005). Diversity jurisdiction requires complete diversity of citizenship between parties, that is, no plaintiff can be a citizen of the same state as any defendant. *Lincoln Prop.*, 546 U.S. at 89; *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F. 2d 1254, 1258 (5th Cir. 1988). For purposes of diversity jurisdiction, the citizenship of a party depends on whether the party is a natural person, a corporation, or a non-corporate artificial entity. A natural person is a citizen of a state within the meaning of the diversity statute if he is a United States citizen and is domiciled within the state. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989). A corporation is generally a citizen of every state by which it has been incorporated and of the state where it has its principal place of business. *See* 28 U.S.C. § 1332(c)(1). A non-corporate artificial entity, such as a trust and limited liability company, is a citizen of each state of which its members are citizens. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195 (1990).

### 2. Personal Jurisdiction

Personal jurisdiction refers to the court's power to bind a particular person or party to the judgment. *CSR Ltd.*, 925 S.W.2d at 594. It flows from the due process clause of the constitution and protects a party from being bound to a judgment "of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)); *Ins. Corp. of Ireland,* 456 U.S. at 702. In contrast to subject matter jurisdiction, personal jurisdiction is a waiveable right, and a party can expressly or implicitly consent to it. *Ins. Corp. of Ireland*, 456

---

[7] The other is federal question jurisdiction. 28 U.S.C. § 1331.

U.S. at 703; *see also Adam v. Saenger*, 303 U.S. 59, 67 (1938) (consent by voluntarily using certain state procedures); *DowElanco v. Benitez*, 4 S.W.3d 866, 871 (Tex. App–-Corpus Christi 1999, no pet.) (consent by judicial admission).

Texas courts may exercise personal jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of jurisdiction; and (2) the exercise of jurisdiction is consistent with federal and state constitutional due process guarantees. *Moncrief Oil Intern., Inc. v. OAG Gazprom Export, LLC*, 414 S.W.3d 142, 149 (Tex. 2013). The long-arm statute allows the exercise of personal jurisdiction over a nonresident defendant who does business in Texas. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). Under the statute, acts by a nonresident that constitute "doing business in Texas" include entering into a contract, which is to be performed in whole or in part in Texas, with a Texas resident and committing a tort in whole or in part in Texas. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (West 2008); *Moncrief*, 414 S.W.3d at 149. A court's exercise of personal jurisdiction over a nonresident is consistent with due process when (a) the nonresident defendant has established minimum contacts with the state, and (b) the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009).

### a. *Minimum Contacts*

The requirement of minimum contacts protects the nonresident defendant from being haled into court when his relationship with the state is too attenuated to support jurisdiction. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002); *Assurance Generales Banque Nationale v. Dhalla*, 282 S.W.3d 688, 696 (Tex. App.-–Dallas 2009, no pet.). Therefore, the focus of a minimum contact analysis is whether the nonresident "purposefully availed" himself of the privilege of conducting activities within the state, "invoking the benefits

and protections of its laws." *Moncrief*, 414 S.W.3d at 150. The activities are analyzed based on quality and nature, not quantity. *Id.* at 151. A nonresident defendant's contacts with a forum state can give rise to (i) general jurisdiction or (ii) specific jurisdiction. *Am. Type*, 83 S.W.3d at 806; *Assurance Generales*, 282 S.W.3d at 696.

### i. *General Jurisdiction*

General jurisdiction arises without regard to the nature of the claim presented. *PHC-Minden, L.P. v. Kimberly-Clark, Corp.*, 235 S.W.3d 163, 168 (Tex. 2007); *see also Walden v. Fiore*, 134 S. Ct. 1115, 1121 n.6 (2014). It involves a court's ability to exercise jurisdiction over a nonresident's claim regardless of whether the claim is related to the defendant's contacts with the state. *Walden*, 134 S. Ct. at 1121 n.6; *PHC-Minden*, 235 S.W.3d at 168. General jurisdiction contacts must be substantial, continuous, and systematic such that they approach the frequency and nature of the activities of local businesses. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014); *Moncrief*, 414 S.W.3d at 150; *PHC-Minden*, 235 S.W.3d at 168 (citing Charles W. "Rocky" Rhodes, *Clarifying General Jurisdiction*, 34 SETON HALL L. REV. 807, 811 (2004)).

### ii. *Specific Jurisdiction*

Specific jurisdiction exists when the cause of action arises from or is related to purposeful activities in the state. *Moncrief*, 414 S.W.3d at 150. A specific jurisdiction analysis focuses on the relationship between the nonresident defendant, the forum state, and the litigation. *Walden*, 134 S. Ct. at 1121; *Assurances Generales*, 282 S.W.3d at 697. The contacts are analyzed on a claim-by-claim basis unless all claims arise from the same forum contacts. *Moncrief*, 414 S.W.3d at 150. Specific jurisdiction minimum contacts are present if (1) the nonresident defendant has purposefully availed himself of the privilege of conducting activities in the forum state, and (2) the cause of action arises from or relates to those contacts. *See Moki Mac*, 221 S.W.3d at 576.

b. *Traditional Notions of Fair Play and Substantial Justice*

A court considers whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice only if minimum contacts are established. *Foley v. Trinity Indus. Leasing Co.*, 314 S.W.3d 593, 602 (Tex. App.--Dallas 2010, no pet.). If a nonresident has minimum contacts with the state, rarely will the exercise of jurisdiction over the nonresident offend traditional notions of fair play and substantial justice. *Moncrief*, 414 S.W.3d at 154-55.

### C. Burden of Proof

The plaintiff and defendant bear shifting burdens of proof in a challenge to personal jurisdiction. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). The initial burden is carried by the plaintiff, who must plead sufficient facts to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Id.* Once the plaintiff has met his burden, the burden shifts to the nonresident defendant to negate all bases of jurisdiction alleged in the plaintiff's petition. *Id.* If the plaintiff fails to allege any jurisdictional facts, the nonresident defendant meets his burden by presenting evidence of nonresidency. *Id.* at 658-59. If the nonresident defendant produces evidence negating personal jurisdiction, the burden returns to the plaintiff to show that, as a matter of law, the court has personal jurisdiction over the defendant. *See Assurances Generales*, 282 S.W.3d at 695. A trial court determines the special appearance from the pleadings, discovery, and any stipulations, affidavits, attachments, and oral testimony. TEX. R. CIV. PROC. 120a(3).

### D. Application of Law to Facts

In his original petition, Mulligan did not allege facts under the Texas long-arm statute, alleging instead that the Trusts and LLCs were Texas residents based primarily upon the position taken in the Utah federal court that the Trusts and LLCs were "citizens" of Texas for diversity of citizenship purposes. The Trusts and LLCs responded by asserting co-trustee Harward's Texas

–11–

residency and citizenship alone did not make them Texas residents for personal jurisdiction purposes because the concepts of citizenship for diversity jurisdiction purposes and residency for personal jurisdiction differ. Further, the Trusts and LLCs argued the alleged transfers did not occur in Texas or concern property located in Texas. The Trusts and LLCs also asserted they were not created, organized, or registered to do business in Texas; never owned any property in Texas; never conducted or had a place of business in Texas; and could not have reasonably anticipated being haled into a court in Texas. These assertions were supported by Abbott's wife's affidavit testimony. On this record, that satisfied the burden of proof of the Trusts and LLCs to present evidence of nonresidency. *See Kelly*, 301 S.W.3d at 658-59. The burden then shifted to Mulligan to show, as a matter of law, that the trial court had personal jurisdiction over the Trusts and LLCs. *Assurances Generales*, 28 S.W.3d at 695.

As stated, Mulligan's bases for jurisdiction, as alleged in his amended petition and verified response, were consent and the commission of torts in Texas.

### 1. Consent

We now address the second issue raised by the Trusts and LLCs, which focuses on Mulligan's consent argument. Mulligan contended the Trusts and LLCs demonstrated Texas jurisdiction in their motion to dismiss the Utah suit when they said they were "considered citizens of the state of Texas by reason of the citizenship of the common trustee, Sandra Kay Harward, and the membership in the limited liability companies in the trusts." Mulligan states this assertion was a judicial admission that the Trusts and LLCs were subject to personal jurisdiction in Texas and demonstrated that the Trusts and LLCs sought benefit or advantage from their Texas citizenship in order to defeat diversity jurisdiction in Utah court.

–12–

### a. *Judicial Admission*

Personal jurisdiction may be conferred on a court by judicial admission. *DowElanco*, 4 S.W.3d at 871. A judicial admission is an assertion of fact by a party that is conclusively established in a live pleading and that the party is barred from later disputing. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex. 2000). Accordingly, the success of Mulligan's argument that the Trusts and LLCs judicially admitted to personal jurisdiction hinges on whether the facts considered in determining if diversity jurisdiction exists are the same facts considered in determining if personal jurisdiction exists. However, as the Trusts and LLCs argue in their brief, and argued to the trial court, diversity jurisdiction citizenship is a concept distinct from residency for personal jurisdiction purposes.

Diversity jurisdiction is a restriction on federal and state power and focuses on the citizenship of the parties to a suit. *See Carden*, 494 U.S. at 195; *Ins. Corp. of Ireland*, 456 U.S. at 702. Personal jurisdiction protects liberty interests and focuses on the relationship between the defending party and forum state. *See Burger King*, 471 U.S. at 471-72; *Ins. Corp. of Ireland*, 456 U.S. at 702. The analysis of a court as to these separate propositions involves different facts and entirely different concepts. The law is clear. An admission of Texas citizenship for federal diversity jurisdiction purposes is not an admission of Texas residency for purposes of state court personal jurisdiction. We cannot accept Mulligan's contention to the contrary. *Cf. Daimler-Benz Aktiengesellschaft v. Olson*, 21 S.W.3d 707, 719-20 (Tex. App.-–Austin 2000, pet. dism'd w.o.j.) (concluding party's allegations, in federal court petition alleging unlawful use of federally registered trademarks and service marks, that it had spent large sums of money to advertise its trademarks and service marks and had used its trademarks and service marks throughout Texas, with the result that its marks had attained inestimable good will in Texas, amounted to judicial admission that it had sufficient contacts with Texas such that state court could exercise personal

jurisdiction over party); *DowElanco*, 4 S.W.3d at 871 (concluding defendant's admission, in answer filed in federal court, that he was "an alien who resides in Hidalgo County, Texas" was judicial admission in state court for personal jurisdiction purposes).

b. *Benefit and Advantage*

Also, we cannot accept Mulligan's contention that the Trusts and LLCs' assertion of citizenship demonstrated the Trusts and LLCs sought benefit or advantage from their Texas citizenship to defeat diversity jurisdiction in Utah court. While a party may implicitly consent to jurisdiction by availing itself of certain state procedures, *see Adam*, 303 U.S. at 67-68, the benefit or advantage Mulligan alleged the Trusts and LLCs obtained by their Texas citizenship, that is, defeating diversity jurisdiction, derives from federal statute not Texas law. *See* 28 U.S.C. § 1332; *cf. GJP, Inc. v. Gosh*, 251 S.W.3d 854, 880 (Tex. App.-–Austin 2008, no pet.) (nonresident defendant enjoyed benefit and protection of Texas laws by closing sale in Texas); *Arterbury v. Am. Bank & Trust Co.*, 553 S.W.2d 943, 948 (Tex. Civ. App.-–Texarkana 1977, no writ) (nonresident bank which through its agent repossessed a car in Texas enjoyed benefit and protection of Texas laws, including right to resort to Texas courts).

Because the Trusts and LLCs did not consent to personal jurisdiction by judicial admission or by seeking benefit from the Texas citizenship to defeat diversity jurisdiction, we decide the Trusts and LLCs' second issue in their favor.

2. Commission of Torts

In their third issue, the Trusts and LLCs assail Mulligan's second basis for jurisdiction, that the commission of torts, stemmed from the Trusts and LLCs' "receipt of fraudulently transferred assets and their participation in a tortious and fraudulent scheme to deprive [him] of [his] interest in the Abbotts' assets and to hinder, delay, and/or defraud [him]." Although recognizing that the alleged transfers occurred outside Texas, Mulligan asserted that the Trusts

–14–

and LLCs could foresee being haled into state court because they knew Mulligan was a Texas resident and the injury resulting from their tortious acts would be suffered in Texas.

As we stated above, a trial court may exercise specific jurisdiction over a nonresident defendant who commits a tort in whole or in part in Texas. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042. However, the plaintiff must show the defendant has established minimum contacts with the state and the exercise of jurisdiction comports with traditional notion of fair play and substantial justice. *See Marchand*, 83 S.W.3d at 795. A showing of foreseeability of harm in the forum state is insufficient. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 788 (Tex. 2005). Rather, the plaintiff must show a substantial connection between the contacts and the operative facts of the litigation. *Moki Mac*, 221 S.W.3d at 585.

Mulligan did not allege in his amended petition or verified response a connection to Texas other than the injury to Mulligan individually and as to his P.C., Texas plaintiffs. *See Michiana*, 168 S.W.3d at 788. Mulligan did not assert any alleged tortious actions occurred in Texas. The operative facts of Mulligan's claims against the Trusts and LLCs, as set forth in his amended petition, are (1) the creation of the Trusts and LLCs in the early 2000s; (2) the Trusts and LLCs conspired with the Abbotts to fraudulently transfer the Maui timeshare, the Abbotts' residence, the St. George condominium, the yacht, and funds from the Abbotts to the Trusts and LLCs; and (3) the Trusts and LLCs' receipt of those assets between 2005 and 2010. The Trusts and LLCs argue most of these operative facts pre-date the breach of contract counterclaim Mulligan filed against Abbott and the multi-million dollar award in damages to Mulligan. Further, the Trusts and LLCs assert their sole connection to Texas is the presence of Texas resident Harward, a co-trustee of the Trusts, and the operative facts alleged by Mulligan pre-date Harward's appointment by one to ten years. The Trusts and LLCs argue because there is no evidence Harward participated in the creation of the Trusts and LLCs or the transfers, no

substantial connection exists between Harward's appointment and the operative facts of Mulligan's claims. We agree. *Cf. Retamco*, 278 S.W.3d at 340 (affirming exercise of specific jurisdiction where nonresident defendant "was a willing participant in transaction with an affiliated Texas company").

Based upon our conclusion that Mulligan did not show a substantial connection between the Trusts and LLCs, the state, and his causes of action, we need not consider whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *See Foley*, 314 S.W.3d at 602. We decide the Trusts and LLCs third issue in their favor.

### 3. Purposeful Appointment of Co-Trustee

In their first issue, in apparent response to Mulligan's oral assertion at the special appearance hearing that they purposefully appointed Harward as co-trustee of the Trusts, the Trusts and LLCs argue that the appointment of Harward alone is insufficient to establish general jurisdiction over them. We need not address this issue, or appellees' corresponding response. There was no testimony offered at the hearing. Accordingly, we decide whether the trial court erred in denying the special appearance from a review of the clerk's record alone. *See* TEX. R. CIV. P. 120a(3); *Michiana*, 168 S.W.3d at 782 ("If all the evidence is filed with the clerk and only arguments by counsel are presented in open court, the appeal should be decided on the clerk's record alone.").

### III. CROSS-POINT – REMAND FOR JURISDICTIONAL DISCOVERY

In a cross-point, Mulligan urges that if we sustain any of the Trusts and LLCs' issues, we should remand the case for the trial court to consider his request for continuance asserted as an alternative form of relief in his response to the special appearance. Mulligan presumes the trial court did not rule on his motion. However, although the record does not reflect the trial court explicitly ruled on Mulligan's motion for continuance, the trial court implicitly denied the

–16–

motion when it proceeded with the special appearance hearing and denied the special appearance. *See U.S. Terra Corp. v. First Nat'l Bank of Park Cities*, No. 05-95-01374-CV, 1996 WL 601717, at \*4 (Tex. App.-–Dallas Oct. 16, 1996, no writ) (not designated for publication) (noting trial court implicitly denied motion for continuance of special appearance hearing where court proceeded with hearing and granted special appearance); *see also Rest. Teams Int'l v. MG Sec. Corp.*, 95 S.W.3d 336, 338 (Tex. App.-–Dallas 2002, no pet.) (same - summary judgment). Accordingly, we review the propriety of the trial court's ruling on the motion for continuance in considering whether to grant appellees' request to remand for jurisdictional discovery.

### A. Standard of Review

An appellate court reviews a trial court's denial of a motion for continuance under an abuse of discretion standard. *See Marchand*, 83 S.W.3d at 800. A trial court abuses its discretion when it acts in an arbitrary and unreasonable manner. *See id.* In determining whether the trial court abused its discretion, the appellate court will consider the length of time the case has been on file, the materiality and purpose of the discovery sought, and whether the movant exercised due diligence to obtain the discovery. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004) (considering these factors in summary judgment context); *Barron v. Vanier*, 190 S.W.3d 841, 847 (Tex. App.-–Fort Worth 2006, no pet.) (op. on reh'g).

### B. Applicable Law

Texas Rule of Civil Procedure 120a(3) provides, in relevant part, that "[s]hould it appear from the affidavits of a party opposing the motion that he cannot, for reasons stated present by affidavit facts essential to justify his opposition, the [trial] court may order a continuance [of the special appearance hearing] to permit affidavits to be obtained or depositions to be taken or discovery to be had or make such other order as is just." TEX. R. CIV. P. 120(a)(3); *see also Lamar v. Poncon*, 305 S.W.3d 130, 139 (Tex. App.-–Houston [1st Dist.] 2009, no pet.).

–17–

### C. Application of Law to Facts

The record here reflects Mulligan filed suit December 18, 2012. The Trusts and LLCs filed their special appearance January 18, 2013 and obtained a hearing date of February 25, 2013. The hearing was subsequently reset to May 17, 2013 and again reset to July 3, 2013. Although the special appearance was originally set to be heard in February 2013, Mulligan did not serve discovery upon defendants, that being request of documents, until May 20, 2013.

The Trusts and LLCs responded to the request for production on June 26, 2013, noting Mulligan had yet to file a response to the special appearance and asserting Mulligan failed to show the discovery requests sought documents "essential to justify an opposition to the special appearance" and "relevant to the jurisdictional facts pled." Rather than filing a motion to compel, *see* TEX. R. CIV. P. 215.1(b), two days later, Mulligan filed his response to the special appearance and an alternative motion for continuance of the special appearance hearing. In his alternative motion for continuance of the hearing, Mulligan asserted the Trusts and LLCs refused to answer the requests despite the requests seeking "information regarding the formation of the trusts, which would also include information about the appointment of a Texas resident as a trustee for the trusts." Further, he asserted he "exercised due diligence in obtaining the discovery but [was] thwarted in [his] efforts due to [the Trusts and LLCs'] refusal to answer the discovery at all." Mulligan's counsel's affidavit in support of the continuance stated that his firm served the discovery "with the expectation that [the Trusts and LLCs'] responses would be used to oppose the special appearance." However, Mulligan's counsel indicated he had been representing appellees in this case and related litigation for many years "throughout all of the relevant underlying proceedings" including the arbitration that led to the multi-million dollar award in Mulligan's favor.

Our inspection of the record reveals Mulligan waited to serve his request for production until slightly more than five weeks before the special appearance hearing, at a point in time six months after filing suit, and three months after the original special appearance hearing setting. According to his motion for continuance, out of the seventy-eight document requests propounded, only eight related to the topics Mulligan stated were "material and relevant" to the special appearance issue "regarding formation of the trusts" and "appointment of a Texas resident as a trustee." Mulligan's specific request for continuance was that "if the trial court is inclined to grant Defendant's special appearance, Plaintiffs request a short continuance to obtain discovery . . .." Yet, no motion to compel was filed by Mulligan. Nevertheless, Mulligan advised the trial court in the motion he has "more than met [his] burden to defeat Defendants' special appearance [but] move[s] in the alternative for a continuance of the special appearance hearing on the grounds that [he has] not been able to obtain sufficient discovery from Defendants."

In order for a trial court to grant a continuance of a special appearance hearing, a party must demonstrate to the trial court "that he cannot for reasons stated present by affidavit facts essential to justify his opposition." *See* TEX. R. CIV. P. 120a(3). The allegations made in the motion for continuance and accompanying affidavit do not satisfy the requirement stated in the rules in order for the trial court to grant such a continuance. *See id.*

The trial court did not abuse its discretion by not granting Mulligan's motion for continuance. *See*, *e.g.*, *Marchand*, 83 S.W.3d at 800-801 (no abuse where appellee had ample time to conduct, and did conduct, discovery but failed to file motion to compel to obtain discovery not provided); *Parex Res., Inc. v. ERG Res., LLC*, 427 S.W.3d 407, 433-34 (Tex. pp.–-Houston [14th Dist.] 2014, pet. filed) (no abuse where appellee filed motion to compel but did not file motion for continuance with attached affidavits as required by Rule 120a(3)); *IRN Realty*

–19–

*Corp. v. Hernandez*, 300 S.W.3d 900, 903 (Tex. App.-–Eastland 2009, no pet.) (abuse of discretion in granting continuance where appellee "merely asserted" in motion that she had been prevented from "discovering facts necessary to preserve her cause of action," but did not file affidavit stating facts essential to justify opposition to special appearance could not be presented).  We cannot agree the case should be remanded to allow Mulligan to conduct jurisdictional discovery.  We resolve his cross-issue against him.

## IV. CONCLUSION

Having decided in favor of the Trusts and LLCs on issues two and three and against Mulligan on his cross-issue, we reverse the trial court's order overruling the special appearance, render judgment granting the special appearance, and dismiss Mulligan's claims against the Trusts and LLCs for want of jurisdiction.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

131000HF.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

FAVOUR LEASING, LLC, ET AL,
Appellant

No. 05-13-01000-CV     V.

PATRICK J. MULLIGAN, ET AL,
Appellee

On Appeal from the 14th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-12-14667-A.
Opinion delivered by Justice Lang. Justices
Moseley and Brown participating.

In accordance with this Court's opinion of this date, we **REVERSE** the trial court's order on defendants' special appearance and **RENDER** judgment **GRANTING** the special appearance and **DISMISSING** the claims against Favour Leasing, LLC, C.F. Abbott Family LLC, C.F. Abbott Trust, and Oranee H. Abbott Trust.

We **ORDER** that appellants Favour Leasing, LLC, C.F. Abbott Family LLC, C.F. Abbott Trust, and Oranee H. Abbott Trust recover their costs of this appeal from appellees Patrick J. Mulligan, an Individual, and the Law Office of Patrick J. Mulligan, P.C., A Professional Corporation.

Judgment entered this 19th day of August, 2014.