D.H. BLAIR INVESTMENT BANKING CORP., Leslie Danziger, and Donald Lawson, Appellants,

v.

Michael J. REARDON, Albert E. Raizner, John Abukhalil, Richard A. Goldfarb, Milton Nirken, Osama Mikhail, Weldon Guest, Mordechaj Blankfeld, Herman Lapin, James T. Fox, Norman Rappaport, Mark Berger, Carol Sue Finkelstein, Gregorio Casar, Randolph W. Evans, Martin Barrash, Richard M. Barrett, M.D. P.A., Daniel Barrett, Cynthia A. Barrett, Robert Gordon, As Trustee of the Alan J. and Sherri Gordon Eisenman Family Trust, Larry I. Lipshultz, Goldfam, Ltd., William Lipsky, Tobias Samo, Gene Landon, Michael Munday, Deborah Brand–Fainstein, Harold L. Harris, Geoffrey D. Harris, Adrienne Harris, Ralph G. Harris, Mazel, Inc., Sheldon Harris, Harvey Fuson, Richard D. Klausmeier And Kay L. Klausmeier, As Trustees of the R.D. & K.L. Klausmeier Trust, Richard D. Klausmeier, Harlan Stein, Richard H. Stein, Edgar Goldberg, Boguslaw Godlewski, Christopher Godlewski, Ronald Golden, James Alexander, Robert K. Zurawin, Mohamed O. Jeroudi, and Thomas J. Mims, Appellees.

No. 14–01–01199–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 31, 2002.

J. Clifford Gunter, III, and Abigail Sullivan, Houston, for Appellants.

Adam P. Schiffer and Jeffrey L. Raizner, Houston, for Appellees.

Panel consists of Justices YATES, SEYMORE, and GUZMAN.

## OPINION ON MOTION FOR REHEARING

LESLIE BROCK YATES, Justice.

We withdraw our opinion of September 26, 2002, and substitute the following opinion. This is an interlocutory appeal from the denial of a special appearance filed by two nonresident individuals and a nonresident investment banking corporation. We conclude the trial court properly exercised personal jurisdiction over the individuals, and thus the court did not err in denying their special appearances. However, we find the trial court erred in denying the corporation's special appearance. Accordingly, we reverse and render judgment dismissing appellees' claims against the corporation. We affirm the remainder of the trial court's order.

### I. FACTUAL AND PROCEDURAL BACKGROUND

LightPath Technologies, Inc. is a manufacturer and marketer of optical glass and other products used in the telecommunications industry. Over a period of approximately ten years, LightPath solicited investments from various sources, including appellees, each of whom received LightPath stock. In 1995, LightPath prepared to sell more of its stock through an initial public offering (IPO). LightPath contracted with D.H. Blair Investment Banking Corp. to serve as underwriters for the IPO. As a condition of the IPO, LightPath

sought to recapitalize by reducing the number of currently outstanding shares from 5.5 million to 1 million, thus increasing the value of each individual share. This required LightPath's current shareholders to approve a "reverse stock split" whereby every 5.5 shares of "Class A" stock would be redeemed for one share. In a proxy statement seeking approval for the 1–for–5.5 reverse split, LightPath also announced its intent to distribute a special dividend of "Class E" shares to existing shareholders. These shares apparently had no value but would automatically convert to Class A shares if LightPath achieved certain financial milestones as set forth in the proxy statement. LightPath's shareholders approved the recapitalization, and the IPO went forward. However, the financial milestones set forth in the proxy statement were never met, and the Class E shares were never converted to Class A shares.

Appellees filed suit against LightPath; D.H. Blair; Donald Lawson, LightPath's former president and CEO; and Leslie Danziger, the founder and a former CEO of LightPath.[1] Appellees brought claims for fraud, negligent misrepresentation, breach of fiduciary duty, and conspiracy. The investors claim they were misled about the financial status of LightPath and that the defendants knew the milestones necessary for conversion of the Class E shares would never be achieved. They further allege they would not have consented to the recapitalization and subsequent IPO but for these misrepresentations. D.H. Blair, Lawson, and Danziger jointly filed a special appearance, asserting the trial court lacked personal jurisdiction over them. The trial court conducted a hearing and ultimately denied the special appearance. Appellants brought this interlocutory appeal. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(7) (Vernon Supp.2002).

## II. STANDARD OF REVIEW

The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the personal jurisdiction of a Texas court. *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789, 793 (Tex.2002). A defendant challenging the court's assertion of personal jurisdiction must negate all jurisdictional bases. *Id.*

Whether a court has personal jurisdiction over a defendant is a question of law, which we review *de novo. Id.* at 794. However, the trial court frequently must resolve questions of fact before deciding the jurisdiction question. *Id.* When, as here, the trial court does not issue findings of fact and conclusions of law with its special-appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied. *Id.* at 795. When the appellate record includes both the reporter's and clerk's records, however, these implied findings are not conclusive and may be challenged for legal and factual sufficiency. *Id.*

## III. PERSONAL JURISDICTION

The Texas long-arm statute authorizes Texas courts to exercise jurisdiction over a nonresident defendant that does business in Texas. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 17.041–.045 (Vernon 1997 & Supp.2002). The broad language of the "doing business" requirement in section 17.042 permits the statute to reach as far as the federal constitutional requirements of due process will allow. *Guardian Royal Exch. Assur., Ltd. v. En-*

---

1. Appellees also sued Milton Klein, a Texas resident and a former director of LightPath. Neither Klein nor LightPath is a party to this appeal.

*glish China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex.1991). Thus, we rely on precedent from the United States Supreme Court and other federal courts, as well as Texas decisions, to determine whether the assertion of personal jurisdiction is consistent with the requirements of due process. *BMC Software,* 83 S.W.3d at 795.

Personal jurisdiction over a nonresident defendant is constitutional when two conditions are met: (1) the defendant has established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Id.* A nonresident defendant that has "purposefully availed" itself of the privileges and benefits of conducting business in the forum state has sufficient contacts to confer personal jurisdiction. *Id.* (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985)). A defendant should not be subject to jurisdiction based on random, fortuitous, or attenuated contacts. *Id.* (citing *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183). Furthermore, the nonresident's contacts must result from its own purposeful activity and not the unilateral activity of the plaintiff or a third party. *See Guardian Royal,* 815 S.W.2d at 227.

The defendant's contacts can give rise to either specific or general jurisdiction. Specific jurisdiction is established if the plaintiff's cause of action arises out of or relates to the defendant's contact with the forum state. *Id.* In contrast, general jurisdiction exists when there are continuous and systematic contacts between the defendant and the forum, even if the plaintiff's claim does not arise from or relate to activities conducted within the forum state. *Id.* at 228.

## A. D.H. Blair

We begin by examining the trial court's denial of D.H. Blair's special appearance. In its petition, appellees alleged the following facts as support for the trial court's assertion of jurisdiction over D.H. Blair: (1) D.H. Blair committed tortious acts outside of Texas that it knew would have effects within Texas; (2) two of D.H. Blair's principals, Martin Bell and J. Morton Davis, served as directors of a company with its principal office in Texas and attended board meetings in Texas; and (3) D.H. Blair engaged in discussions with multiple Texas residents about possible financings and entered into contracts with two or three companies located in Texas. D.H. Blair contends it has successfully negated all bases for both specific and general jurisdiction.

### 1. Specific Jurisdiction

Specific jurisdiction exists when the plaintiff's claims arise out of or relate to the nonresident defendant's contacts with Texas. *Guardian Royal,* 815 S.W.2d at 230. These contacts, in turn, must arise from action or conduct by the defendant that was purposefully directed toward Texas. *Id.* Appellees assert they established specific jurisdiction because D.H. Blair conceived of and participated in the allegedly fraudulent recapitalization of LightPath shares that resulted in damages to numerous LightPath investors in Texas. Appellees concede that none of D.H. Blair's alleged activities actually occurred in Texas. D.H. Blair made no direct representations to appellees in Texas (or elsewhere), and none of the discussions or negotiations between D.H. Blair and LightPath relating to the recapitalization took place in Texas. Nevertheless, appellees claim personal jurisdiction is appropriate because D.H. Blair knew its actions would have an effect on Texas residents.

For purposes of our jurisdictional analysis, we presume the trial court impliedly found that D.H. Blair possessed such knowledge.[2] Accordingly, we must decide whether a Texas court may assert personal jurisdiction over D.H. Blair based solely on D.H. Blair's knowledge that its acts, all of which occurred outside Texas, would affect individuals in Texas. We conclude it may not.

 D.H. Blair was not involved in any way with soliciting and selecting Light-Path's investors. Nothing suggests that D.H. Blair's conduct was in any way directed toward Texas shareholders as distinguished from LightPath's shareholders in general. *Cf. Michel v. Rocket Eng'g Corp.*, 45 S.W.3d 658, 674 (Tex.App.-Fort Worth 2001, no pet.) (concluding that advertising in a nationally distributed publication with subscribers in Texas is not an activity purposefully directed at Texas). Thus, whether or not D.H. Blair knew many LightPath investors resided in Texas, its only contact with the state of Texas was the fortuitous result of LightPath's conduct in soliciting those investors. It is well-settled that a defendant cannot be haled into a Texas court based on the unilateral activity of a third party. *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex.2002); *see also Burger King*, 471 U.S. at 475, 105 S.Ct. at 2183. We cannot say D.H. Blair's mere knowledge that its actions would have effects in Texas equates to purposefully availing itself of the privileges and benefits of conducting business in Texas. Accordingly, we conclude D.H. Blair has negated appellees' allegation supporting specific jurisdiction.

### 2. General Jurisdiction

 Appellees also contend D.H. Blair is subject to general jurisdiction. General jurisdiction may only be exercised when the nonresident defendant's contacts with Texas establish "a pattern of continuing and systematic activity." *Coleman,* 83 S.W.3d at 809. The minimum-contacts analysis for general jurisdiction is more demanding than for specific jurisdiction and requires a showing that the defendant conducted substantial activities within the forum. *Guardian Royal,* 815 S.W.2d at 228.

In support of its special appearance, D.H. Blair presented evidence of the following facts, which appellees do not dispute:

- D.H. Blair is a Delaware corporation with its offices located in New York.

- D.H. Blair is not licensed or qualified to do business in Texas.

- D.H. Blair has no agent or representative for service of process in Texas.

- D.H. Blair has never maintained an office or facility in Texas, nor has it ever owned or rented any real property in Texas.

- D.H. Blair has no employees, salespersons, or sales agents in Texas.

- D.H. Blair has never directed any advertising toward Texas.

- D.H. Blair maintains no bank account, mailing address, or telephone listing in Texas.

Appellees contend jurisdiction is proper based on (1) D.H. Blair's alleged activities giving rise to this suit; (2) its negotiations with eight companies with offices in Texas, some of which resulted in D.H. Blair contracting with and acquiring a stake in a Texas company; and (3) D.H. Blair's ownership interest in a company with its principal offices in Texas and participation by

---

**2.** Although D.H. Blair could have challenged the trial court's implied finding for factual and legal sufficiency, no such challenge was made.

D.H. Blair's sole shareholder and vice-chairman on that company's board.[3] As we note above, none of D.H. Blair's actions giving rise to appellees' claims were purposefully directed at Texas. Therefore, we must determine whether D.H. Blair's other contacts with Texas support the assertion of jurisdiction.

In response to the special appearance, appellees presented evidence of the following, which we presume the trial court found to be true:

- D.H. Blair owns approximately 38.5% of the stock in Venus Exploration, a Delaware corporation with its principal offices in Texas. J. Morton Davis, D.H. Blair's sole shareholder, has been a director of Venus since 1986. Martin Bell, D.H. Blair's vice-chairman, has served on Venus's board since 1991 and has traveled to Texas for board meetings two or three times.

- In 1993, D.H. Blair served as underwriters for a public offering and private placement on behalf of TransAmerican Waste Industries, a Delaware company with offices in Texas. D.H. Blair negotiated by telephone with and sent a letter of intent to TransAmerican's chairman in Texas. D.H. Blair also transmitted and received written communications between New York and Texas regarding consent agreements and a confidentiality agreement. D.H. Blair acquired options to purchase 1400 units of convertible debentures from TransAmerican.

- Also in 1993, D.H. Blair signed a letter of intent with CKS Acquisitions to invest $6 million in CKS for the purpose of acquiring several Texas companies. D.H. Blair delivered the signed letter of intent to CKS's chairman in Texas. However, this deal was never completed.

- In 1994, D.H. Blair signed a letter of intent with Cytoclonal Pharmaceutics, a Delaware company with its executive offices in Texas, to serve as placement agent for a private placement offering. D.H. Blair negotiated the deal with Cytoclonal's CEO by letter and telephone between New York and Texas. In addition, D.H. Blair's attorneys may have traveled to Texas in connection with this transaction. As of August 1995, D.H. Blair owned options to purchase over 350,000 shares, or approximately 5%, of Cytoclonal's common stock following its initial public offering. At some point, D.H. Blair purchased 58,333 shares of Cytoclonal stock.

- Between 1993 and 1997, D.H. Blair negotiated by telephone and by letter with at least four other companies in Texas. In at least three instances, D.H. Blair delivered a proposed letter of intent to the company's chairman or CEO in Texas. In one case, D.H. Blair entered into a confidentiality agreement, which D.H. Blair signed in New York and faxed to Texas.

To the extent these contacts are directed at Texas, we conclude they are too sporadic to constitute the kind of continuous and systematic general business activity necessary to justify the assertion of general jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416–18, 104 S.Ct. 1868, 1873–74, 80 L.Ed.2d 404 (1984) (concluding general jurisdiction did not exist over a defendant

---

**3.** It is undisputed that none of the negotiations and subsequent transactions identified by appellees nor the board participation of D.H. Blair's principals have any connection to appellees' claims in this case.

that purchased substantial amounts of goods, equipment, and services from a Texas company, sent personnel into Texas for training and consultation, accepted checks drawn on a Texas bank, and sent its CEO to Texas to negotiate a contract). Accordingly, we find there is no basis for an assertion of general jurisdiction.

Because D.H. Blair did not have sufficient minimum contacts with Texas to subject it to the trial court's jurisdiction, we conclude the trial court erred in denying D.H. Blair's special appearance.

### B. Danziger and Lawson

With respect to Danziger and Lawson, appellees alleged the following jurisdictional facts: (1) both Danziger and Lawson visited Texas on multiple occasions in connection with shareholder and director meetings, at which they solicited appellees' investments and made misrepresentations; (2) they visited Texas on multiple occasions for personal visits; (3) Lawson owns a home and pays property taxes in Texas, maintains utility and related accounts on that home in Texas, and owns a car with license plates registered in Texas; and (4) Danziger and Lawson engaged in actions outside of Texas they knew would have effects in Texas. Danziger and Lawson maintain they have negated both specific and general jurisdictional bases.

### 1. Specific Jurisdiction

■ Neither Danziger nor Lawson dispute that their alleged actions were directed toward Texas. Nor do they dispute that appellees' claims arise out of or relate to their alleged conduct. Instead, they claim they performed the acts alleged by appellees solely on behalf of LightPath and not in their individual capacities. Citing the "fiduciary shield" doctrine, Danziger and Lawson claim that these contacts can-

not be imputed to them individually to establish personal jurisdiction.

In *Vosko v. Chase Manhattan Bank, N.A.*, this court stated that "jurisdiction over an individual generally cannot be based on jurisdiction over a corporation with which he is associated unless the corporation is the alter ego of the individual." 909 S.W.2d 95, 99 (Tex.App.-Houston [14th Dist.] 1995, writ denied). We cited *Stuart v. Spademan,* a Fifth Circuit decision that described the "fiduciary-shield doctrine" as providing that "an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual." 772 F.2d 1185, 1197 (5th Cir.1985). Danziger and Lawson urge us to interpret the doctrine so that any actions they took while serving as officers of LightPath cannot be considered in determining whether they are subject to personal jurisdiction. We decline to do so.

■ In *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), the Supreme Court stated that, although individuals' contacts with a forum are not to be analyzed based on their employer's activities in that forum, "their status as employees does not somehow insulate them from jurisdiction." 465 U.S. at 790, 104 S.Ct. at 1487. Based on this language in *Calder,* Texas courts have concluded there is no blanket protection from jurisdiction simply because the defendant's alleged acts were done in a corporate capacity. *See Brown v. General Brick Sales Co.,* 39 S.W.3d 291, 300 (Tex.App.-Fort Worth 2001, no pet.); *General Elec. Co. v. Brown & Ross Int'l Distribs., Inc.,* 804 S.W.2d 527, 532 (Tex. App.-Houston [1st Dist.] 1990, writ denied); *see also Smith v. Lanier,* 998 S.W.2d 324, 334–35 (Tex.App.-Austin 1999, pet. denied) ("An agency relationship does not shield an individual from jurisdictional contacts with a state...."). Instead,

"[e]ach defendant's contacts with the forum State must be assessed individually." *Calder*, 465 U.S. at 790, 104 S.Ct. at 1487.

Here, appellees allege both Danziger and Lawson made false representations at meetings in Texas for the purpose of inducing Texas residents to approve Light-Path's recapitalization and subsequent IPO. In a case with similar facts, this court refused to apply the fiduciary-shield doctrine to protect a defendant from personal jurisdiction based on alleged misrepresentations that were directed into Texas and foreseeably relied on in Texas, despite the defendant's claim that he acted only in a corporate capacity. *See Shapolsky v. Brewton*, 56 S.W.3d 120, 133–34 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). We likewise hold that the fiduciary-shield doctrine does not apply in this case.

We conclude Danziger and Lawson have not satisfied their burden of negating the assertion of personal jurisdiction based on specific jurisdiction. Because a nonresident defendant must successfully negate all bases of personal jurisdiction to prevail in a special appearance, we need not consider appellees' jurisdictional allegations based on general jurisdiction. *See Shapolsky*, 56 S.W.3d at 135.

### 2. *Fair Play and Substantial Justice*

Having concluded that Danziger and Lawson had sufficient contacts with Texas, we next consider whether the exercise of jurisdiction over them offends traditional notions of fair play and substantial justice. *See Guardian Royal*, 815 S.W.2d at 231. The following factors, when appropriate, should be considered: (1) the burden on the defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in ob-

taining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.* Only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when, as here, the nonresident defendant has purposefully established minimum contacts with the forum. *Id.*

Danziger and Lawson claim the exercise of jurisdiction over them is inconsistent with traditional notions of fair play and substantial justice because (1) they would be unfairly burdened if forced to defend in Texas, (2) neither Texas nor the interstate judicial system has an interest in having this dispute litigated in Texas, and (3) appellees have no interest in maintaining their lawsuit in Texas. While Danziger and Lawson may be subjected to some burden to travel to Texas, this purported burden would not be so great as to be inconsistent with the constitutional guarantees of due process. This is particularly true given the fact that some of the allegedly tortious acts committed by Danziger and Lawson occurred while both were physically present in Texas. The state of Texas has an obvious interest in providing a forum for resolving disputes involving its citizens, particularly those disputes in which the defendant allegedly committed a tort in whole or in part in Texas. *Shapolsky*, 56 S.W.3d at 135. Finally, we find it incredible to suggest that appellees, the overwhelming majority of whom are Texas residents, have no interest in resolving their dispute in a Texas forum based solely on the fact that the recapitalization "was effectuated outside of Texas." We conclude the exercise of personal jurisdiction over Danziger and Lawson comports with traditional notions of fair play and substantial justice.

### IV. CONCLUSION

We conclude D.H. Blair did not have sufficient minimum contacts with the state

of Texas to support an assertion of personal jurisdiction; however, Danziger and Lawson failed to negate all bases for the trial court's exercise of personal jurisdiction over them. Accordingly, we reverse the portion of the trial court's order denying D.H. Blair's special appearance and render judgment dismissing appellees' claims against D.H. Blair. The remainder of the trial court's order is affirmed.