

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-14-00364-CV

ANDREW J. NORSTRUD                                                    APPELLANT

V.

ANNA AND JOHN CICUR                                                   APPELLEES

----------

### FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY
### TRIAL COURT NO. 153-273779-14

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

This is an interlocutory appeal from the trial court's denial of Appellant Andrew J. Norstrud's special appearance in a suit filed against him by Appellees Anna and John Cicur. Norstrud raises two issues on appeal: one asserting that the trial court's findings of fact and conclusions of law are not entitled to

---

[1]*See* Tex. R. App. P. 47.4.

deference by this court and another asserting that the trial court erred by determining specific personal jurisdiction over Norstrud exists in Texas. Because the trial court's fact findings are either unchallenged or are supported by legally sufficient evidence that underpins the trial court's conclusions of law determining that Norstrud has minimum contacts with Texas and purposefully availed himself of the privilege of doing business in Texas, that the exercise of personal jurisdiction over Norstrud comports with traditional notions of fair play and substantial justice, and that specific personal jurisdiction exists over Norstrud in Texas, we will affirm the trial court's order denying Norstrud's special appearance.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The Cicurs sued Norstrud for violations of the Texas Securities Act, fraud, fraudulent inducement, fraudulent concealment, breach of fiduciary duty, negligence, negligent misrepresentation, liability based on principles of agency and respondeat superior, negligent supervision, statutory fraud under the Texas Business and Commerce Code, and professional misconduct; the Cicurs alleged that Norstrud generated and provided fraudulent information to induce their financial investment in Amstem, a foreign company producing stem-cell-containing cosmetics purportedly promoting youthful skin.[2]  The Cicurs asserted

---

[2]The Cicurs sued other defendants as well, but the trial court severed the Cicurs' claims against Norstrud following its denial of Norstrud's special appearance and stayed the proceedings against the other defendants in the trial court pending this appeal.

2

that the trial court has general and specific jurisdiction over Norstrud because "this lawsuit arises out of Norstrud's business activities in Texas (including, but not limited to, contracting with the Cicurs regarding performance to occur in whole or in part in Texas, and committing tortious acts in whole or in part in Texas)" and pleaded jurisdictional facts concerning Norstrud's conduct in connection with each cause of action asserted. Norstrud filed a special appearance arguing that the trial court lacked jurisdiction over him and filed three affidavits in support of his special appearance.[3] The Cicurs filed a response to Norstrud's special appearance, attaching 250 pages of special appearance evidence, including John Cicur's affidavit, copies of the five agreements signed by Norstrud, pertinent emails, the Power Point prepared at least in part by Norstrud to solicit the Cicurs' investment, the Circurs' bank records documenting their investment in Amstem, Amstem's bank records reflecting deposit of the Cicurs' investment and documenting Amstem's use of the funds, and deposition excerpts. Norstrud lodged no objection to the Cicurs' evidence, and the reporter's record from the hearing on Norstrud's special appearance reflects that the trial court considered it. After the hearing on Norstrud's special appearance, the trial court signed an order denying it. At Norstrud's request, the trial court

---

[3]The affidavits are from Norstrud, Norstrud's administrative assistant, and Norstrud's accounting clerk. All three of the affidavits deny that Norstrud resides in Texas or that he does business in Texas. They do not specifically address the Cicurs' factual allegations concerning Norstrud's commission of torts in whole or in part in Texas.

entered findings of fact and conclusions of law in support of its determination that specific jurisdiction exists over Norstrud.

### III. BURDENS OF PROOF AND STANDARD OF REVIEW

The standard of review and the burdens of proof that we apply in reviewing a trial court's ruling on a special appearance are recited extensively in the case law. Under the Texas long-arm statute, the plaintiff has the initial burden to plead sufficient allegations to confer jurisdiction. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009). This minimal pleading requirement is satisfied by an allegation that the nonresident defendant is doing business in Texas. *See Assurances Generales Banque Nationale v. Dhalla*, 282 S.W.3d 688, 695 (Tex. App.—Dallas 2009, no pet.); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (West 2015) (setting forth acts that constitute doing business for purposes of the long-arm statute). The nonresident defendant then has the burden of negating all bases of jurisdiction alleged in the plaintiff's petition. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002), *cert. denied*, 537 U.S. 1191 (2003).

The nonresident defendant can negate jurisdiction on either a factual or a legal basis. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 659 (Tex. 2010). Factually, a nonresident defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations. *Id.*; *Foley v. Trinity Indus. Leasing Co.*, 314 S.W.3d 593, 604 (Tex. App.—Dallas 2010, no pet.).

4

The plaintiff can then respond with its own evidence that affirms its jurisdictional allegations. *Kelly*, 301 S.W.3d at 659. Legally, the defendant can show that even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts fall short of purposeful availment; for specific jurisdiction, the claims do not arise from the contacts; or traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction. *Id.*

The trial court determines whether or not, viewing all of the evidence, a defendant has negated all potential bases for jurisdiction; in doing so, the trial court frequently must resolve questions of fact. *See, e.g.*, *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). If a trial court issues findings of fact in connection with a special appearance, the appellant may challenge the fact findings on legal and factual sufficiency grounds. *Id.* Unchallenged findings of fact, however, are considered conclusively established and are binding on an appellate court. *See Dresser-Rand Grp. Inc. v. Centauro Capital, S.L.U.*, 448 S.W.3d 577, 580 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (recognizing that unchallenged special-appearance findings of fact are binding on appellate court but addressing challenged findings); *Rushmore Inv. Advisors, Inc. v. Frey*, 231 S.W.3d 524, 530 (Tex. App.—Dallas 2007, no pet.) ("Because Rushmore does not challenge these fact findings, they are binding on us."); *Hooks v. Carpeton Mills, Inc.,* No. 02-05-000059-CV, 2005 WL 3526560, at *1 (Tex. App.—Fort Worth Dec. 22, 2005, no pet.) (mem. op.) (holding that "[w]hen the

trial court makes findings of fact following a special appearance hearing, they are binding on this court unless challenged on appeal pursuant to ordinary insufficiency-of-the-evidence claims").

Conclusions of law may not be challenged for sufficiency but are reviewed to determine their correctness based upon the facts. *Rischon Dev. Corp. v. City of Keller*, 242 S.W.3d 161, 166 (Tex. App.—Fort Worth 2007, pet. denied), *cert. denied*, 555 U.S. 996 (2008). The conclusion that personal jurisdiction exists over a defendant is a conclusion of law that we review de novo. *Retamco Operating, Inc.*, 278 S.W.3d at 337. Thus, we will uphold the trial court's special appearance ruling if it can be sustained based on any conclusions of law supported by the evidence. *City of Houston v. Cotton*, 171 S.W.3d 541, 546 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

## IV. THE TRIAL COURT'S FINDINGS AND CONCLUSIONS

The trial court signed thirty-four findings of fact and eighteen conclusions of law in connection with its ruling on the special appearance. *See BMC Software Belg., N.V.*, 83 S.W.3d at 794 (recognizing that trial court may sign findings of fact in connection with special-appearance ruling). Relevant here, the trial court found and concluded the following:

1. The Cicurs are Texas residents.

2. Defendant Andrew J. Norstrud ("Norstrud") is a Florida resident.

3. In May 2010, Norstrud was acting as the Chief Financial Officer of Amstem Corp. ("Amstem").

6

4. At that time, Norstrud claimed Amstem needed $1 million in bridge note financing to tide the company over as it sought equity financing for an upcoming project.

5. Norstrud knew Defendants Jakobus Jordaan and Stonegate Securities, Inc.

6. Jordaan and Stonegate, who knew the Cicurs, sought out the Cicurs to secure the $1 million.

7. Norstrud, himself and through Jordaan and Stonegate, presented the Cicurs with an opportunity to invest in a business relating to the sale and distribution of stem cell-based cosmetics.

8. Norstrud, himself and through Jordaan and Stonegate, told the Cicurs that Amstem was a Nevada corporation that owned 100% of Amstem International and owned 90% of the Histostem Co., Ltd.

9. Norstrud, himself and through Jordaan and Stonegate, promised the Cicurs [] that their investment would be secured by nearly 178 million shares of Histostem common stock. These shares amounted to 90% of all issued and outstanding shares of Histostem.

10. The Cicurs invested $1 million in Amstem. The Cicurs invested the money based on misrepresentations made by Norstrud.

11. On May 24, 2010, the Cicurs made a $500,000 secured investment in Amstem in exchange for a note and securities.

12. On June 18, 2010, the Cicurs made another $500,000 secured investment in Amstem in exchange for a note and securities.

13. Norstrud executed at least five Agreements on behalf of Amstem.

. . . .

7

21. Norstrud personally certified, in his individual capacity, that all the representations and warranties of Amstem were true and accurate in all material respects.

22. The Agreements [signed by Norstrud] were to be performed in Texas.

23. Amstem was supposed to pay the Cicurs back their principal and interest by November 30, 2010.

24. Amstem defaulted.

25. Norstrud spent the Cicurs' $1 million, which he purported to obtain on Amstem's behalf.

26. Norstrud took approximately $100,000 for himself directly, and an additional $300,000 through companies he controlled.

27. Norstrud also directed funds obtained from the Cicurs to himself through Amstem's credit card and travel accounts.

28. Norstrud paid moneys he obtained from the Cicurs to individuals who assisted him in creating the appearance that Amstem was a legitimate company.

29. The Cicurs later learned that the shares in Histostem, which formed the security for their investment, were not owned by Amstem.

30. Norstrud knew or should have known that the Histostem and Amstem merger never happened.

. . . .

## CONCLUSIONS OF LAW

35. Norstrud is subject to specific personal jurisdiction in Texas.

36. Norstrud waived his special appearance by executing the Escrow Agreement and the Pledge and Security Agreement, which contained forum-selection clauses and/or clauses operating as contractual consent to jurisdiction. *Michiana*

8

*Easy Livin' Country, Inc. v. Holden*, 168 S.W.3d 777, 792 (Tex. 2005).

37. The "corporate shield" doctrine is inapplicable to the facts of this case. *SITQ E.U., Inc. v. Reata Rest. Inc.*, 111 S.W.3d 638, 650–51 (Tex. App.—Fort Worth 2003, pet. denied).

38. Norstrud is subject to specific personal jurisdiction in Texas because he took actions in his corporate capacity for which, if determined to be fraudulent and/or tortious, he also would face liability in his individual capacity. *Id.*

39. Norstrud is subject to personal jurisdiction in Texas because Amstem is his alter ego and/or a sham entity. *See Wolf v. Summers-Wood, L.P.*, 214 S.W.3d 783, 790 (Tex. App.—Dallas 2007, no pet); *Vosko v. Chase Manhattan Bank, N.A.*, 909 S.W.2d 95, 99 (Tex. App.—Houston [14th Dist.] 1995, writ denied).

40. Norstrud controlled the internal business operations and affairs of Amstem to such an extent that Norstrud and Amstem effectively ceased to be separate including, but not limited to, controlling and directing the spending of Amstem's money for his own benefit and directing other Defendants to engage the Cicurs in investing in Amstem. *Commonwealth Gen. Corp. v. York*, 177 S.W.3d 923, 925 (Tex. 2005) (per curiam) (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 789–99 (Tex. 2002)).

41. The Cicurs complied with the requirements under the Texas long-arm statute by alleging that Norstrud committed torts in Texas. Tex. Civ. Prac. & Rem. Code § 17.042(2).

## V. NORSTRUD'S FIRST ISSUE

In his first issue, Norstrud argues that "minimal deference" should be afforded to the trial court's findings of fact and conclusions of law because the trial court adopted the Cicurs' proposed findings and conclusions verbatim. In support of this position, Norstrud cites *Villagomez v. Rockwood Specialties, Inc.*,

210 S.W.3d 720, 726 (Tex. App.—Corpus Christi 2006, pet. denied). Because the Texas Supreme court has not adopted differing standards of review for findings of fact adopted verbatim from a prevailing party's proposed findings of fact versus findings of fact not adopted verbatim or modified by the trial court, we decline to follow the holding of our sister court in *Villagomez* that lesser deference is required by this court to findings of fact adopted verbatim, to the extent *Villagomez* may be construed as so holding.

We will continue to apply the standard of review enunciated by the supreme court in *BMC Software Belg., N.V.* and its progeny—requiring an appellant to challenge the sufficiency of the evidence to support fact findings made by the trial court and regarding the facts found as conclusively established in the absence of such a challenge. *See, e.g.*, *Kelly*, 301 S.W.3d at 659 n.7 (noting that the losing party on a special appearance in the trial court may challenge in the court of appeals the sufficiency of the evidence to support the trial court's fact findings); *BMC Software Belg., N.V.*, 83 S.W.3d at 794 (stating that "[i]f a trial court enters an order denying a special appearance, and the trial court issues findings of fact and conclusions of law, the appellant may challenge the fact findings on legal and factual sufficiency grounds"); *Dresser-Rand Grp. Inc.*, 448 S.W.3d at 580 (holding unchallenged fact findings are binding on appeal); *Rushmore Inv. Advisors, Inc.*, 231 S.W.3d at 530 (same); *Hooks,* 2005 WL 3526560, at *1 (same).

10

Accordingly, we overrule Norstrud's first issue.

## VI. NORSTRUD'S SECOND ISSUE

### A. The Parties' Positions

In his second issue, Norstrud asserts that the trial court erred "in finding personal jurisdiction over Mr. Norstrud, a Florida resident with no contacts with Texas." Norstrud argues that to the extent he had contacts with Texas, such contacts were not attributable to him individually but were in his capacity as the Chief Financial Officer of Amstem. Norstrud argues that his contacts with Texas as a corporate officer of Amstem cannot be attributed to him individually absent proof from the Cicurs that Amstem is his alter ego. He also asserts that his contacts with Texas in his capacity as Amstem's CFO are insufficient to satisfy the "purposeful availment" element required to establish personal jurisdiction. And finally, Norstrud argues that the trial court's exercise of specific jurisdiction over him violates traditional notions of fair play and substantial justice.

In response, the Cicurs make several arguments. First, the Cicurs assert that Norstrud did not challenge any of the trial court's fact findings, so the findings are binding on this court. Second, the Cicurs point out that Norstrud signed agreements containing misrepresentations,[4] generated a Power Point containing misrepresentations, and orchestrated the dissemination of this misinformation to them to induce their investment in Amstem; these

_____

[4]Several of the agreements contain provisions either that the agreement is governed by Texas law or that the agreement is performable in Texas.

11

misrepresentations form the basis of the Cicurs' common-law and statutory tort claims against Norstrud. The Cicurs note that two exceptions exist to the jurisdictional protection afforded by the fiduciary-shield doctrine—those being when the corporate officer commits torts for which he may be held individually liable and when the corporation is operated as the officer's alter ego—and argue that, although the trial court concluded both exceptions applied here, Norstrud challenged on appeal only the alter-ego conclusion. Consequently, the Cicurs assert that the unchallenged fact findings supporting the conclusion of law that the fiduciary-shield doctrine does not apply based on the first exception— because Norstrud, even if his acts were on behalf of Amstem, committed common-law and statutory torts for which he may be held individually liable— render it unnecessary for this court to address Norstrud's challenge to the alter-ego exception. Thus, the Circurs contend that the only issue left for resolution by this court is the legal issue of whether the trial court's exercise of specific jurisdiction over Norstrud comports with traditional notions of fair play and substantial justice.

## B. Unchallenged or Legally Sufficient Fact Findings

Norstrud's special appearance and his three supporting affidavits factually negated the Cicurs' jurisdictional allegations by simply denying any contacts with Texas. *See Kelly*, 301 S.W.3d at 659 (explaining that to factually negate jurisdiction nonresident "defendant can present evidence that it has no contacts with Texas"); *Foley*, 314 S.W.3d at 604 (recognizing defendant's affidavit

12

negated plaintiff's claimed bases for subjecting defendant to jurisdiction). The Cicurs responded by presenting 250 pages of their own jurisdictional evidence, documenting Norstrud's alleged tortious acts that were committed in whole or in part in Texas either through Jordaan and Stonegate Securities or in Norstrud's capacity as an officer of Amstem and documenting how their claims against Norstrud individually arose from his alleged tortious acts in these capacities. Logically, we must first address the Cicurs' contention that Norstrud has failed to challenge the legal or factual sufficiency of the trial court's fact findings.

Norstrud's opening appellate brief does not contain a specific issue or argument challenging the sufficiency of the evidence to support any of the trial court's findings of fact.[5] His opening brief performs no legal- or factual-sufficiency analysis of the 250 pages of special-appearance evidence filed by the Cicurs pertinent to any trial court fact finding. Norstrud's reply brief argues that Norstrud did challenge the trial court's "key" fact findings and cites seven different pages in Norstrud's opening brief. We have reviewed the seven referenced pages. The first and second referenced pages simply state the black-letter law that fact findings may be challenged for sufficiency of the evidence. The third referenced page contains no sufficiency challenge whatsoever. The

[5]Norstrud's reply brief does undertake such an analysis, but the law is well-settled that new issues, including sufficiency of the evidence challenges, may not be raised for the first time in a reply brief. *See, e.g.*, *Hutchison v. Pharris*, 158 S.W.3d 554, 564 & n.11 (Tex. App.—Fort Worth 2005, no pet.) (noting the well-established principle and listing supporting cases).

13

fourth and fifth referenced pages challenge conclusion of law number 39 on legal grounds related to nonapplication of the fiduciary-shield doctrine based on the alter-ego exception. The sixth and seventh cited pages challenge conclusion of law number 45 and state that "the record is entirely void of any interactions directly between Mr. Norstrud and the Cicurs" and "the trial court's findings of fact as to this issue are legally and factually insufficient."

To the extent Norstrud's opening brief can be liberally construed as raising a challenge to the findings of fact supporting conclusions of law 39 (non-application of the fiduciary-shield doctrine based on the alter-ego exception) and 45 (stating personal jurisdiction exists based on Norstrud's contacts within Texas), because Norstrud's brief does not address evidence favorable to the Cicurs, as necessary in the against-the-great-weight factual-sufficiency analysis required of Norstrud as the party ultimately bearing the burden to negate personal jurisdiction, any factual-sufficiency challenge is waived, and at most, Norstrud raises only a legal-sufficiency challenge concerning fact findings supporting conclusions of law 39 and 45. *See, e.g.*, *Archer v. DDK Holdings LLC*, No. 14-14-00017-CV, 2015 WL 1393299, at *4 (Tex. App.—Houston [14th Dist.] Mar. 24, 2015, no pet.) (holding factual-sufficiency challenge to fact findings waived because appellant did not address evidence favorable to appellees); *see also* Tex. R. App. P. 38.1(i) (requiring brief to contain clear and concise argument for the contentions made). Viewing the 250 pages of special-appearance evidence in the light most favorable to the Cicurs, the evidence rises

14

at least to a level that would enable reasonable and fair-minded people to differ in their conclusions concerning the findings of fact supporting conclusions of law 39 and 45. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). Specifically, the Cicurs' evidence, viewed in the light most favorable to the trial court's fact findings shows that Jordaan and Stonegate Securities signed an agency agreement with Amstem. Norstrud, on behalf of Amstem, produced a Power Point and materials for Jordaan and Stonegate Securities to utilize to solicit a specific "bridge note" investment in Amstem. The Power Point and materials contained misrepresentations generated by Norstrud. After the Cicurs agreed to make the investment, Norstrud through Amstem created "transaction" documents that also contained misrepresentations, and all of the transaction documents were signed by Norstrud. Norstrud utilized the monies invested by the Cicurs for purposes other than the stated purpose for the investment and also utilized the monies for his personal benefit. Because Norstrud does not identify which of the trial court's thirty-four fact findings that he purports to challenge by his contention that conclusions of law 39 and 45 are erroneous, we have examined all of the trial court's fact findings, and we hold that, viewed in the light most favorable to the Cicurs and disregarding contrary evidence because a reasonable fact-finder could, the evidence is legally sufficient to support all of the trial court's fact findings.

Because the trial court's fact findings are either unchallenged or are challenged only for legal sufficiency and are supported by legally-sufficient

15

evidence, they are binding on this court on appeal. *See Dresser-Rand Grp. Inc.*, 448 S.W.3d at 580; *Rushmore Inv.*, 231 S.W.3d at 530; *Hooks*, 2005 WL 3526560, at *1. Accordingly, looking to the trial court's findings of fact in our jurisdictional analysis below, we determine whether the trial court correctly determined that it possesses specific jurisdiction over Norstrud.

### C. The Law Concerning Specific Jurisdiction

Texas courts may assert specific personal jurisdiction over a nonresident if (1) the Texas long-arm statute authorizes the exercise of personal jurisdiction and (2) the exercise is consistent with federal and state constitutional due-process guarantees. *Moki Mac River Expeditions*, 221 S.W.3d at 574. Specific jurisdiction is established if the claims in question arise from or relate to the defendant's purposeful contacts with Texas. *Spir Star AG v. Kimich,* 310 S.W.3d 868, 873 (Tex. 2010); *Kelly,* 301 S.W.3d at 658; *Moki Mac River Expeditions*, 221 S.W.3d at 576. The "arises from or relates to" requirement lies at the heart of specific jurisdiction by defining the required nexus between the nonresident defendant, the litigation, and the forum state. *Moki Mac River Expeditions*, 221 S.W.3d at 579. That is, when specific jurisdiction is asserted, the minimum-contacts analysis focuses on the relationship between the nonresident defendant, the forum state, and the litigation. *Id.* at 575–76; *Guardian Royal Exch. Assurance, Ltd.*, 815 S.W.2d 223, 226 (Tex. 1991). For a court to exercise specific jurisdiction over a nonresident defendant, two requirements must be met: (1) the nonresident defendant's contacts with the forum state must be purposeful;

16

and (2) the cause of action must arise from or relate to those contacts. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S. Ct. 2174, 2183–85 (1985); *Spir Star AG*, 310 S.W.3d at 873; *Moki Mac River Expeditions*, 221 S.W.3d at 579; *BMC Software Belg., N.V.*, 83 S.W.3d at 796.

Finally, in addition to the requirement of minimum contacts with the forum state, the exercise of personal jurisdiction over a nonresident defendant must comport with traditional notions of fair play and substantial justice. *See Burger King*, 471 U.S. at 476, 105 S. Ct. at 2184; *BMC Software Belg., N.V.*, 83 S.W.3d at 795. If it is determined that the defendant has purposefully directed activities at forum residents, it becomes the defendant's burden to "present a compelling case the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477, 105 S. Ct. at 2184–85; *see Spir Star AG*, 310 S.W.3d at 878–79. The burden of having to travel to the forum state for litigation alone is ordinarily insufficient to defeat jurisdiction. *Guardian Royal*, 815 S.W.2d at 231 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223, 78 S. Ct. 199, 201 (1957)); *Tabacinic v. Frazier*, 372 S.W.3d 658, 671 (Tex. App.—Dallas 2012, no pet.).

The following factors are useful in evaluating whether subjecting a nonresident defendant to specific jurisdiction violates traditional notions of fair play and substantial justice: (1) the burden on the defendant; (2) the interests of the forum in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in

17

obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering substantive social policies. *Guardian Royal*, 815 S.W.2d at 228 (citing *Asahi Metal Indus. Co., Ltd. v. Superior Court*, 480 U.S. 102, 113, 107 S. Ct. 1026, 1033–34 (1987); *Burger King*, 471 U.S. at 476, 105 S. Ct. at 2184; *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S. Ct. 559, 564 (1980)); *D.H. Blair Inv. Banking Corp. v. Reardon*, 97 S.W.3d 269, 278 (Tex. App.—Houston [14th Dist.] 2002, pet. dism'd w.o.j.) (op. on reh'g). Only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum. *Guardian Royal*, 815 S.W.2d at 231 (citing *Burger King*, 471 U.S. at 477–78, 105 S. Ct. at 2185); *D.H. Blair Inv. Banking Corp.*, 97 S.W.3d at 278.

### D. Jurisdictional Analysis

### 1. Texas Long-Arm Statute

In determining whether Texas courts may assert specific jurisdiction over Norstrud, who is a nonresident, we first examine whether the Texas long-arm statute authorizes the exercise of personal jurisdiction. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013); *Moki Mac River Expeditions*, 221 S.W.3d at 574. The long-arm statute allows the exercise of personal jurisdiction over a nonresident defendant who "commits a tort in whole or in part in this state." Tex. Civ. Prac. & Rem. Code Ann. § 17.042(2). The Cicurs pleaded that Norstrud had committed common-law and statutory torts in Texas

18

consisting of violations of the Texas Securities Act, fraud, fraudulent inducement, fraudulent concealment, breach of fiduciary duty, negligence, negligent misrepresentation, liability based on principles of agency and respondeat superior, negligent supervision, statutory fraud under the Texas Business and Commerce Code, and professional misconduct. Thus, Texas courts may exercise specific jurisdiction over Norstrud to defend the tort claims asserted against him so long as the exercise of specific jurisdiction is consistent with federal and state constitutional due-process guarantees. *Moncrief Oil Int'l Inc.*, 414 S.W.3d at 150; *Retamco*, 278 S.W.3d at 338.

## 2. Minimum Contacts and Purposeful Availment

Although generally a trial court's assertion of specific jurisdiction over a nonresident defendant requires us to analyze jurisdictional contacts on a claim-by-claim basis, we need not assess contacts on a claim-by-claim basis if all claims arise from the same forum contacts, as they do here. *See Moncrief Oil Int'l Inc.*, 414 S.W.3d at 150. Thus, we next analyze whether Norstrud's forum contacts with Texas, as reflected in the trial court's fact findings, support the trial court's conclusions of law that it possessed specific personal jurisdiction over Norstrud, that Norstrud had minimum contacts with Texas, that Norstrud purposefully availed himself of the privilege of conducting activities within Texas, and that Norstrud sought a financial benefit or profit through such purposeful availment.

The following binding findings of fact by the trial court are relevant for our "purposeful availment" inquiry:

8. Norstrud, himself and through Jordaan and Stonegate, told the Cicurs that Amstem was a Nevada corporation that owned 100% of Amstem International and owned 90% of Histostem Co., Ltd.

9. Norstrud, himself and through Jordaan and Stonegate, promised the Cicurs [] that their investment would be secured by nearly 178 million shares of Histostem common stock. These shares amounted to 90% of all issued and outstanding shares of Histostem.

10. The Cicurs invested $1 million in Amstem. The Cicurs invested the money based on misrepresentations made by Norstrud.

. . . .

21. Norstrud personally certified, in his individual capacity, that all the representations and warranties of Amstem were true and accurate in all material respects.

28. Norstrud paid moneys he obtained from the Cicurs to individuals who assisted him in creating the appearance that Amstem was a legitimate company.

29. The Cicurs later learned that the shares in Histostem, which formed the security for their investment, were not owned by Amstem.

30. Norstrud knew or should have known that the Histostem and Amstem merger never happened.

These unchallenged findings show that Norstrud, by himself as well as through Jordaan and Stonegate Securities, purposefully targeted the Cicurs in Texas, directed misinformation to them to secure their investment, and used the money that they had invested in a manner inconsistent with the alleged purpose

20

for soliciting it. These fact findings support the trial court's conclusion that "Norstrud purposefully availed himself of the privilege of conducting activities within Texas."[6]  *See Burger King*, 471 U.S. at 472, 105 S. Ct. at 2182 (explaining purposeful availment satisfied when nonresident "purposefully directs" his efforts "at residents of the forum" and the litigation results from injuries "that arise out of or relate to" those activities); *cf. IRA Resources, Inc. v. Griego*, 221 S.W.3d 592, 596 (Tex. 2007) (finding no purposeful availment when plaintiff proved no misrepresentations by nonresident and no knowledge of misrepresentations attributable to nonresident).

Also, several of the agreements signed by Norstrud contain clauses that either Texas law governs the agreement or that the agreement is performable in Texas, these clauses show the contemplation of a long-term relationship with Texas and constitute factors to consider in determining whether a defendant "purposefully invoked the benefits and protections of a State's laws." *Burger King*, 471 U.S. at 482, 105 S. Ct. at 2187.

---

[6]Norstrud relies on several cases rejecting a state's assertion of jurisdiction over a nonresident parent corporation when the assertion of jurisdiction is premised simply on the fact that the parent corporation's subsidiary is doing business in the state. *See Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 335, 45 S. Ct. 250, 250–51 (1925); *BMC Software Belg., N.V.*, 83 S.W.3d at 795–96; *Knight Corp. v. Knight*, 367 S.W.3d 715, 730 (Tex. App.—Houston [14th Dist.] 2012, no pet.). We do not address these cases because they are based on facts inapposite to the facts here in which the trial court's exercise of specific jurisdiction over Norstrud pivots on whether Norstrud's own contacts with Texas are attributable to him individually or only to Amstem.

Norstrud appears to argue that, despite the trial court's fact findings (i.e., accepting them as true), he nonetheless cannot be shown to have sufficient contacts because he himself did not make the representations on which the Cicurs' claims are premised "directly" to the Cicurs. But, the Cicurs' special-appearance evidence includes documents and Jordaan's deposition excerpts establishing that Jordaan and Stonegate Securities were acting as agents for Amstem. John Cicur's affidavit outlines the misrepresentations made by Jordaan and Stonegate Securities; Jordaan testified that he did not know the information he had provided to solicit the Cicurs' investment was false but agreed that Amstem, by Norstrud, had provided "materially false misrepresentations to the Cicurs." Specifically concerning Norstrud, Jordaan testified, "he [Norstrud] signed the Sarbanes certificate and he [Norstrud] signed the SEC filings that made representations and he [Norstrud] signed a securities purchase agreement [with the Cicurs] with specific reps in it that are not true." Thus, the Cicurs' special-appearance evidence established that Jordaan and Stonegate Securities acted as agents of Amstem who were utilized by Norstrud to funnel false information to the Cicurs. *See Griego*, 221 S.W.3d at 596-97 (implicitly recognizing that agent's contacts with forum are attributable to principal). And the fact that Norstrud, in providing false information to Jordaan and to Stonegate Securities to solicit the Cicur's investment, was acting on behalf of Amstem and had engaged them to act as agents of Amstem, does not shield him from a

22

Texas court's exercise of specific jurisdiction. *See, e.g.*, *SITQ E.U., Inc.*, 111 S.W.3d at 651.

Norstrud also argues that a purposeful-availment analysis fails because he personally did not physically enter Texas. But the trial court found, and the Cicurs' special-appearance evidence is legally sufficient to establish, that Norstrud purposefully availed himself of the privilege of conducting activities within Texas; consequently, jurisdiction is not defeated merely because Norstrud did not physically enter the state. *See Burger King*, 471 U.S. at 476, 105 S. Ct. at 2184 (stating that "[s]o long as a commercial actor's efforts are 'purposefully directed' toward residents of another State," the lack of physical entry is not fatal to specific jurisdiction.).

The common-law and statutory tort claims asserted by the Cicurs against Norstrud arise from and are directly related to Norstrud's purposeful contacts with Texas. *See, e.g.*, *Spir Star AG*, 310 S.W.3d at 873; *Kelly*, 301 S.W.3d at 658. That is, given the trial court's fact findings, the requisite specific-jurisdiction nexus exists between Norstrud, the Cicurs' claims, and the State of Texas. *See Moki Mac River Expeditions*, 221 S.W.3d at 579.

23

## 3. Fiduciary Shield[7]

While individuals' contacts with a forum are not to be analyzed based on their employer's activities in that forum, "their status as employees does not somehow insulate them from jurisdiction." *Calder v. Jones*, 465 U.S. 783, 790, 1047 S. Ct. 1482, 1487 (1984); *SITQ E.U., Inc.*, 111 S.W.3d at 651. A corporate officer is not protected from the exercise of specific jurisdiction, even if all of his contacts were performed in a corporate capacity, if the officer engaged in tortious or fraudulent conduct directed at the forum state for which he may be held personally liable. *See Crithfield v. Boothe*, 343 S.W.3d 274, 287 (Tex. App.—Dallas 2011, no pet.); *Ennis v. Loiseau,* 164 S.W.3d 698, 707 (Tex. App.—Austin 2005, no pet.); *SITQ E.U., Inc.*, 111 S.W.3d at 651 (citing *D.H. Blair Inv. Banking Corp.*, 97 S.W.3d at 277). This is based on the well-established principle that a

---

[7]Although technically not falling within a fiduciary-shield analysis, in support of his contention that Texas courts lack specific personal jurisdiction over him because he is not personally a party to the documents he signed (that the Cicurs claim contain misrepresentations) and signed them only in his corporate capacity, Norstrud cites cases in which a party sought to enforce a contract against a nonresident individual who either did not sign the contract or signed on behalf of a corporation. *See Suzlon Energy Ltd. v. Trinity Structural Towers, Inc.*, 436 S.W.3d 835, 840–41 (Tex. App.—Dallas 2014, no pet.) (nonsignatory to contract sued for breach of contract); *Foley*, 314 S.W.3d at 604 (same); *Wolf*, 214 S.W.3d at 792 (individual defendants sued for breach of contract signed in corporate capacity). The facts of these cases cited and discussed by Norstrud are inapposite to the facts here because the Cicurs do not assert a breach-of-contract cause of action against Norstrud. They are not attempting to enforce the agreements; instead, they assert common-law and statutory tort causes of action against Norstrud for various misrepresentations that he allegedly made to induce their investment, including some misrepresentations in the agreements he signed.

corporate officer is primarily liable for his own torts. *SITQ E.U., Inc.*, 111 S.W.3d at 651; *see Calder*, 465 U.S. at 790, 1047 S. Ct. at 1487 (holding that reporter and editor of allegedly defamatory magazine article were subject to personal jurisdiction).

Norstrud argues that the conduct the Cicurs attribute to him was committed by Jordaan and Stonegate Securities, and he claims that to the extent the conduct was attributable to him, he did it while working for Amstem, triggering the protection of the fiduciary-shield doctrine. Although Norstrud contends that the conduct underlying the Cicurs' suit is attributable to Amstem, rather than to himself, the subject conduct—misrepresentations in the inducement of an investment and the misuse of the funds for noncorporate purposes—is tortious. Norstrud's corporate-officer status thus does not shield him from the trial court's exercise of specific jurisdiction.[8] *See Crithfield*, 343 S.W.3d at 287 (holding that

---

[8]Norstrud argues extensively that the Cicurs failed to establish the alter-ego exception to the fiduciary-shield doctrine. But we agree with the Cicurs that two exceptions exist to application of the fiduciary-shield doctrine, and Norstrud does not address the other exception—the corporate-officer-committed-torts-for-which-he-could-be-held-individually-liable exception. Because the trial court's fact findings support application of this exception per conclusion of law 38—stating that "Norstrud is subject to specific personal jurisdiction in Texas because he took actions in his corporate capacity for which, if determined to be fraudulent and/or tortious, he also would face liability in his individual capacity"—we need not address Norstrud's argument concerning the correctness of the trial court's alter-ego conclusion of law; nonapplication of the fiduciary-shield doctrine is supported by conclusion of law 38, which is not addressed on appeal. Norstrud's reply brief claims that on pages 31 through 36 of his opening brief he challenged the trial court's conclusion that the corporate-officer-committed-torts-for-which-he-could-be-held-individually-liable exception to the fiduciary-shield doctrine did not apply, but those pages argue only that personal jurisdiction does not exist

because plaintiff's claims were based on alleged misrepresentations for which nonresident defendant corporate officer could be held individually liable, fiduciary-shield doctrine did not apply); *SITQ E.U., Inc.*, 111 S.W.3d at 651 ("This evidence [of tortious activities directed at Texas] shows that Wener had sufficient minimum contacts with Texas to support the exercise of specific jurisdiction over him individually, even if all of his activities directed towards Texas were done in his capacity as Canderel's chairman, CEO, and sole director."); *D.H. Blair Inv. Banking Corp.*, 97 S.W.3d at 278; *see also Calder*, 465 U.S. at 790, 1047 S. Ct. at 1487. The trial court's unchallenged or legally-sufficient findings support its conclusions of law that Norstrud is subject to its specific jurisdiction and that the fiduciary-shield doctrine does not shield him. *See Rischon Dev. Corp.*, 242 S.W.3d at 166 (holding that we review the trial court's conclusions of law to determine their correctness based on the facts); *Cotton,* 171 S.W.3d at 546 (holding that appellate court will uphold the trial court's special-appearance ruling if it can be sustained based on any conclusions of law supported by the evidence).

### 4. Fair Play and Substantial Justice

Lastly, the final step of our analysis requires us to determine the propriety of the trial court's conclusion of law that its exercise of personal jurisdiction over

---

over Norstrud because he did not sign any agreement in his individual capacity. *See*, *e.g. Colton*, 171 S.W.3d at 546 (requiring appellate court to uphold judgment on any correct legal theory supported by findings of fact).

Norstrud comports with traditional notions of fair play and substantial justice. *See Burger King*, 471 U.S. at 476, 105 S. Ct. at 2184; *BMC Software Belg., N.V.*, 83 S.W.3d at 795. When, as here, the trial court has determined that the defendant—Norstrud—has purposefully directed activities at forum residents, it then becomes the defendant's burden to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477, 105 S. Ct. at 2184–85; *see Spir Star AG*, 310 S.W.3d at 878–79. Norstrud did not present such a compelling case in his special appearance, in the special-appearance hearing before the trial court, or in his brief on appeal. *See Burger King*, 471 U.S. at 477, 105 S. Ct. at 2184–85 (establishing that it is the defendant's burden to present a compelling argument defeating jurisdiction on fair-play and substantial-justice grounds); *Spir Star*, 310 S.W.3d at 878–79 (same); *Guardian Royal*, 815 S.W.2d at 231 (noting that only in rare cases will jurisdiction not comport with fair play and substantial justice once minimum contacts exist); *D.H. Blair Inv. Banking Corp.*, 97 S.W.3d at 278 (same).

And supporting the trial court's finding that the exercise of specific jurisdiction over Norstrud comports with traditional notions of fair play and substantial justice are its findings or conclusions that the burden on Norstrud of defending a lawsuit in Texas is not too great, Texas has an interest in adjudicating the matter in its courts, and the Cicurs have an interest in obtaining convenient and effective relief in the state where they are residents and where

27

the agreements were intended to be performed. *See Guardian Royal*, 815 S.W.2d at 231 (listing these factors for use in determining whether the exercise of jurisdiction comports with traditional notions of fair play and substantial justice). Thus, Norstrud failed to satisfy his burden of presenting a compelling case showing that his is the rare case in which minimum contacts exist but jurisdiction violates fair play and substantial justice.

In summary, having determined that the long-arm statute authorizes the assertion of personal jurisdiction over Norstrud in Texas; Norstrud had the requisite minimum contacts with Texas and purposefully availed himself of the privilege and benefits of conducting business in Texas; the Cicurs' claims against Norstrud arise from and are related to his contacts with Texas; the fiduciary-shield doctrine does not apply to protect Norstrud from the exercise of specific jurisdiction because even if such contacts were performed in a corporate capacity, the Cicurs produced evidence that Norstrud had engaged in tortious or fraudulent conduct for which he may be held personally liable; and the trial court's exercise of personal jurisdiction over Norstrud comports with traditional notions of fair play and substantial justice, we overrule Norstrud's second issue claiming that the trial court erred by concluding specific personal jurisdiction exists over Norstrud in Texas.

28

## VII. CONCLUSION

Having overruled Norstrud's two issues, we affirm the trial court's order denying Norstrud's special appearance.

/s/ Sue Walker
SUE WALKER
JUSTICE

PANEL:  LIVINGSTON, C.J.; WALKER and SUDDERTH, JJ.

DELIVERED: August 13, 2015